UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIUS MARTICE MCCRARY

     Petitioner

     Case No. 14-cv-14485

v.

     Hon. Laurie J. Michelson

STEVE RIVARD,

     Respondent.

     FILED

     OCT 20 2016

     CLERK'S OFFICE
     U.S. DISTRICT COURT

## MOTION TO AMEND AND TO REOPEN
## HABEAS CORPUS PETITION § 2254

On December 21, 2014, Petitioner McCrary filed a pro se habeas corpus petition under 28 U.S.C. 2254. (Dkt.1). Shortly thereafter, Petitioner filed a motion to stay this case to allow him to exhaust state remedies for one of his claims (Dkt.4). On January 27, 2015 this court granted Petitioner's motion and allowed him to return to the state courts for exhaustion purposes. See (Dkt. 6).

Petitioner was convicted in Oakland County Circuit Court of first-degree murder (under two theories), Mich Comp. Laws § 750.317, first-degree home invasion, Mich. Comp. Laws § 750.110a, and three counts of possesion of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to life imprisonment for murder, seven to twenty years for the home invasion, and two years in prison for possession of a firearm during the commission of a felony.

Petitioner appealed his conviction on grounds that: (1) the trial court deprived him of his right to present a defense by denying his request for a

jury instruction on voluntary manslaughter; (2) the prosecutor's comments on Petitioner's failure to present a defense violated his constitutional rights and shifted the burden of proof; and (3) the judgment of sentence improperly reflects two convictions for first-degree murder and felony firearm even though there was only one homicide. The Michigan Court of Appeals affirmed Petitioner's conviction, but vacated one conviction for firearm. See People v McCrary, No. 308237, 2013 wl 2662754 (Mich. Ct. App. June 13, 2013). On November 25, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. See People v McCrary, 495 Mich. 901; 839 N.W. 2d 470 (2013).

On November 21, 2014, Petitioner filed his habeas petition, raising three issues that he presented to the state court. He also raise a fourth issue regarding the use of allegedly inflammatory photographs at trial. Petitioner raised this issue in a post-conviction motion for relief from judgment. Petitioner now ask this court to review his entire petition for writ of habeas corpus. O'Sullivan v Boerckel, 526 U.S. 838, 842 (1999). This requirement is satisfied if a prisoner "invokes one complete round of the States's established appellate review process," including a petition for discretionary review in the state supreme court, "when that review is part of the ordinary appellate review procedure in the state."

Petitioner contends that his case must be reopened if he file his amended petition within 90 days of exhausting his state remedies for the fourth claim. Petitioner has fully complied with the order entered on 01/27/15, and states that the Michigan Supreme Court denied leave to appeal on

September 6th, 2016, therefore Petitioner's motion to reopen his original habeas corpus petition is timely filed and properly filed. Petitioner pray that this court grant him a writ of habeas corpus based on the the inflammatory nature of these photographs. See amended brief in support.


RELIEF REQUESTED


Petitioner Darrius Martice McCrary, pray that this Court grant Petitioner a writ of habeas corpus, or in the alternative, grant Petitioner any further relief.


Darrius Mattrice McCrary No. 827472
Muskegon Correctional Facility
2400 S. Sheridan Dr.
Muskegon, MI 49442


September 6th, 2016

STATE OF MICHIGAN

IN THE 6 th JUDICIAL CIRCUIT COUNTY OF OAKLAND

PEOPLE OF THE STATE OF MICHIGAN                           SC:147473

        Plaintiff-Appellee,                              COA:308237

v                                                        OAKLAND CC:2011-237893-FC

DARRIUS MATRICE MCCRARY                                   JUDGE:COLLEEN A. O'BRIEN

        Defendant-Appellant,

## MOTION FOR EVIDENTIARY HEARING

In support of his motion, defendant states:

1. Defendant has filed a Motion for Relief From Judgment challenging his convictions and sentence. In his Affidavit supporting the motion, defendant claims he was denied effective assistance of counsel on appeal because his appellate counsel was made aware of, but failed to raise questions concerning the validity of the prejudicial photographs that was objected to in the trial record. These facts do not appear in the record for as the discussion between the defendant and his appellate counsel, it is unclear from the record why counsel waived and or by-passed or failed to raise such issue now raised by defendant.

2. Defendant now seeks an evidentiary hearing pursuant to MCR 6.508(C) to develope a testimonial record to support his claim. To the extent that the claim raised depends on facts not of record, it is incumbent on defendant to make a tesimonial record at this level to support his claim. See People v Ginther,390 Mich.436,442-443,212 NW 2d 922 ( 1973).

3. Defendant incorporates by reference herein his Motion For Relief From Judgment and Affidavit and Brief in Support.

## RELIEF REQUESTED

        For the foregoing reasons, defendant prays this court will grant the within Motion and schedule and conduct an evidentiary hearing.


Dated:

                                      DARRIUS MATRICE MCCRARY

## STATEMENT OF FACTS

This is a criminal case where in the Defendant/Appellant, DARRIUS MARTICE MCCRARY, was charged with and later convicted by a jury in Oakland County on one count of first-degree felony murder, one count of first-degree home invasion, as well as a seperate count of possession of a firearm during the commission of a felony ( herein-after referred to simply as felony firearm) conviction, one count or charge as to each primary felony. Defendant/Appellant McCrary was acquitted, found not guilty on one count of assault with intent to murder and accompanying felony firearm charge. ( Warrant, Crim. Info. Verdict Form & VI 4)( see TT Vol. 6 line 4).

Mr. McCrary was sentenced on January 17, 2012, to serve terms of life in prison without parole on the first-degree pre-meditated murder conviction and another such term on the first-degree felony murder conviction. As to all matters Darrius McCrary was sentenced by the trial court as follows:

• First-degree premeditated murder-Life in prison without parole

• First-degree felony murder-Life without parole

• First-degree home invasion. 7 to 40 years

Each of the three(3) prison terms listed above was/were to run **concurrently** ( **but as if one sentence),** each was to be served consecutive and prior to the three(3) primary felony sentences. ( Judgment of sentence/ Amended to reflect just one or a single first-degree murder conviction and sentence based on both the therory of premeditated murder and felony murder. However, that Amended Judgment of sentence still lists two(2) convictions based on one homicide and failed to take off or remove one(1) felony firearm convigtion/sentence. ( see attached Appellate brief p. 2 Exhibit A ) for further insight of the Original Appeal Of Right ans issues raised therein ( see Exhibit A infra) .

Mr. Lynch pro formaly addressed the court regarding some obvious photographs of the alleged incident, the scene and the autopsy.( TT vol. 1. p. 5) **Trial counsel position is that he realize they can use** photographs provided there's a proper foundation.( TT vol. 1 p. 5) His concern is that they're color photographs and on behalf of his client he would submit they are more prejudicial in that regard, meant to inflame the jury. And they would ask that they only be used as black and whites. ( TT vol. 1. p.5).

The prosecution for the People response was since the court has dealt with the issue of colored photo-graphs before and this is <u>People versus Mills</u>, 450 Mich 61, a 1995 case. And what the court found is that their prejudicial affect does not outweigh their probative value. These photographs show the nature and extent of her injuries. Quite frankly some of the photographs which are the autopsy photographs she was shot four times. I can't show those or depict those to the jury without those photographs.(TT vol.1. p. 6). What they do is they corroborate Doctor Dragovic's testimony that they doesn't have to, in fact, accept.

So while I understand Mr. Lynch's argumentts I believe that the probative value—what the court to determine is does their prejudicial affect substantially outweigh the probative value. And the prosecution sub-mitted to the court they don't. How—this is a case of premeditation. They saw intent. (TT vol. 1. p. 6). Mr. Lynch, counsel for Defendant/Appellant standing was the photos can't go in, he argued color versus black and whitw. ( TT vol.1, p.6) THE COURT Denied defense counsel's request and adopted the argument of the prosecutor. ( TT vol. 1,p. 49,50).

Juror Messing was afraid they would be sick to their stomach.( TT vol.1, p. 52,53)

The government's first and primary witness was **Mackford M. Hall,III**(the 19-year-old son of the deceased ( sub-ject of these murder charges), Fredericka Dixion. (TT vol. II, p. 48-49) Mackford M. Hall.III ( heereinafter primarily referred to simply as "Hall") testified that his mother, Fredericka Dixion had dated Darrius McCrary and had in the past lived with him for a period of years.( TT vol. II, p. 49) one witness ( Sharon Stone) testi-fied they had been in a relationship for 6 or 8 years.( TT vol. V p. 13) in fact, McCrary had only ceased living with Hall, his Mother and Siblings( if Darrius had in fact completely ceased doing so) approximately three(3) months before his Mother's death on November 25,2010.( TT vol/II p. 51& 54) Hall lived at the 21244 Westview Avenue address in Royal Oak Township, a duplex, with his mother, brother, sister( and Darrius McCrary living with them until about three(3) months prior to his Mother's death).( TT vol. II, p. 51&54-58) Hall said that after ending the relationship with McCrary, his Mother dated Fred Wilkerson up until her death, November 25,2010. ( TT vol. II,p. 58-59) He also knew Mr. McCrary's car to be a burgandy Grand Prix or Grand Am.(TT vol. II,P. 60).

On thanksgiving day November 25,2010, relatives/family started to come over around 3:00 p.m. and in total there were about seven(7) [ or ten (10)] people over for the holiday. At around 8:00 p.m. everyone was gone, but for Hall and his Mother. ( TT vol. II, 63-64 & 114-115) Hall himself did not remember seein Fred Wilkerson at the house on Thanksgiving, for dinner or otherwise.( TT vol.II,p. 114-115) Hall indicated he went upstairs to play video games; his mother, to the best of his knowledge, was in the basement( her bedroom).( TT vol.II,p.64) When he came down stairs to the kitchen to heat some food, Hall heard a "jingling" at the fron door like someone was trying to open it. Looking through the peephole he claims Darrius McCrary was outside.(TT vol.II, 65-67) Hall belives McCrary(on the porch) was on a phone/cell calling or talking to someone.( TT vol.II, 66-68& 71) Hall seeing this checked to make sure the door was locked, it was and he went into the kitchen.((TT vol.II,p.72) At the same time he yelled down to his mother that McCrary was outside, she told him to lock the door and Hall replied he had already done so, continued warming his food and went upstairs.(TT vol.II, p.72) Hall came back down stairs about six(6) minutes later to get his food at about 8:30p.m., looked out the window again and saw McCrary standing under the light on the sidewalk(TT vol.II,p. 73&75-76) Hall and his mother passed each other as he was getting hid food and she appeared to be on the phone coming up from thr basement.(TT vol. II, p.79) As she went into the living room Hall heard a bang, a loud noise someone kicked the dorr in(TT vol.II,p.80) Although not timing, Hall said he heard a noise, about 30 seconds to a minute after his mother passed him. When he went to see about the noise, his mother was running back, a gun was fired and she fell to the ground. Hall claimed that after his mother went down, McCrary came/went after him.( TT vol. II 81) Hall claimed that as he came out of the kitchen he saw three(3) shots being fired, his mother falling to the floor/ground face first having been shot in the back.( TT vol II P.81-82) (See Brief on Appeal of Right for further detail attached Exhibit A) The first law enforcement person on the scene of this homicide was Oakland County Sheriff's Sergeant(Sgt.) **Saman Marzban**, assigned to the Royal Oak Township substation. Arriving at the scene Marzban saw a black man in his mid to late teens ( Mackford Hall) who was hysterical, screaming, while going back and forth in front of the residence de-claring someone had just shot his mom.( TT vol. III p. 14) Sgt. Marzban upon entering the house observed a gunshot victim( Ms. Dixon) lying on her back, her eyes open and with an obvious gunshot wound to her abdomen. She was un-responsive, no pulse and not breathing on the floor about 10 to 12 feet away from thr door itself. When Marzban

entered there were other women inside—at least one applying pressure to Fredericka Dixion's abdominal wound.(TT vol.III 15-16, 18 & 22-24)

Marzban testified that a deadbolt lock on the front door with wood was broken and on the ground, as was the plate that attached to the wall and door with wood splintered along the door jam( consistent with door being forced open).( TT vol. III 'p.25-28) William Foreman also gave testimony as to front door damage which he photographed. ( TT vol.III 53-58) Marzban also spoke with and took a statement ( including a written statement) from Jalen Harris next door. (TT vol. 29-30) ( For further insight into this matter See Brief on Appeal Of Right attached Exhibit A). **Eddie Flounory, Jr.,** lived directly across the street from Fredericka Dixion. While Dixion lived at the house ( duplex) across the street for about three(3) years, Flounory had lived at his residence for 35 years. (TT vol. III 111) Mr. Flounory knew/had known McCrary from the neighborhood for years( much longer than he had known Ms. Dixion) and would see McCrary at Fredericka's house regularly. He knew McCrary lived there with her, but didn't know/recall how long. ( Foe further detail regarding Flounory tesimony relating ti his account see Brief Exhibit A).

**Keshia Squalls-Southern** ( hereinafter Squalls) was across the street from Fredericka Dixion's house that Thanksgiving with her children at her grandmother's house. Squalls had known Fredericka Dixion for over 5 years and they exchanged pleasantries when at her grandmother's house.( TT vol. 132-135) She had also known McCrary for a long time and considered him a friend.( TT vol. III 134) Squalls testified that she arrived at her grandmother's between about 6:30 and 7:00 p.m. when the house was pretty full. About 45 minutes after she arrived it was dark outside and people started leaving, but she did not recall the exact time.( TT vol. III 136-138).

Whwn Squalls was leaving she heard three(3) gunshots while at the front door.( TT vol.III 138) Actually she indicated she ran to the door as she herd the three(3) shots.( TT vol. III 138-139) At that point Squalls claims she saw McCrary ( Boo) running across Fredericka's grass and yelled to see if he was ok.( TT vol. III 140).( For more insight to Squalls testimony see attached Brief Exhibit A ).

**Jasmine Dixion** testified McCrary moved out in about June of 2010, to an apartment. At the time Fredericka Dixion and McCrary "broke up" and Dixion began dating Fred Wilkerson. (TT vol IV 9) Jasmine indicated that wilkerson would come to the house and did stay overnight. After McCrary moved out she saw him outside her mother's home a number of times sitting in his car( on his cellphone).( TT vol. IV 10-11) Jasmine testified that when her mother began dating Fred Wilkerson, Darrius would be ( Seen) out front of the house and he would call her mother who in turn would have jasmine look outside to see McCrary for herself sitting in his car. ( For more details on jasmine account to this case see attached Brief, exhibit A ).

**Lt.(Lieutenant) Mark Gardner** testified that he got a call that he needed to respond to a westview address in Royal Oak Township on November 25, 2010. ( TT vol.IV 52-53) And he got the call from Deputy Marzban at the time. Sergeant McCall who was on the command desk for the Sheriiff's Office who kind of handles the road patrol. He got a call from dispatch and he also got a call from Seregent Rich Butane who was his partner in this—on this particular incident. ( TT vol. IV 53) He got there ( Westview address) Right around twenty after 9:00,9:30. About forty-five minutes later ( TT vol. IV 53) When he got there there were other officers or deputies on the scene. And as the officer in charge he was aware of the time a 911 call firs came in regarding the incident at around 20:30 which is 8:30, 20:30 is military time.( TT vol. IV 54) So while he didn't arrive there for forty-five minutes after you got there approximately

3

forty-five minutes later EMS they showed up a short time after he got there.( TT vol . IV 55). When he got to the
scene the area is taped off and he walked into the residence at 212144 Westview.( TT vol.IV 56) Peoples Number 17.
He seen the picture of the house. and that was the position that Fredericka Dixion was in when he got to the house.
( TT vol. IV 56-57) When he start walking through the house he saw shell casings.( TT vol. IV 58) He went back and
got a buccal swab what they call for a test thet they can send to the michigan State Police Crime Lab to get tested.
And his reason was based on all the information that they had they're were trying to figure out the blood that was in
the kitchen, if it was from they're victim which—or if it would have maybe been from her son Mackford.( TT vol.IV 59
And the blood was submitted to a lab at some point and time. And he got results foom the lab as to whether it was a
male or female's blood. Defense objected as to he was not qualified to testify to the results.( TT vol. IV p. 59,60)
( See attached brief Exhibit A for further insight regarding Lt. Gardner testimony or Vol. IV of transcript).

**DOCTOR LJUBISA J. DRAGOVIC** ( Doctor would be referrence hereinafter)

Doctor was found to be an expert in the area of forensic pathology.( TT vol.IV p. 105) to establish the cause of death
which is the statutory requirement. To understand the relationships of the findings on the outside of the body, any
departures from normal on the outside of the body. And then the findings that are departures from normal within the
body intergrating those, putting them and relAting those togeather and understanding the mechanism of death and es-
tablishing the manner of death as well.( TT vol. IV p. 105-108).And when you are looking for the internal abnormalitie
you're not necessary looking for the same things. You're looking for correlation between the findigs on the outside
 of the body and the findings inside the body. That is the anatomical findings, the changes, the tissue, the organs.
If there is injury to correlate the degree of damage of the internal organs vis-a-vis the surface of the body.

        so all of those things are being considered more or less simutaneously because that is sort of an inter-
grated process.( TT vol. IV p. 108)  They are asked to reduce their findings to paper that are made during the examin-
nation of the body.( TT vol. IV p. 108) He is taking photographs other than using this diagram.( TT vol.IV.p. 108,109)
And his purpose for taking photographs is to maintain a permanent evidence that can corroborate or not corroborate
anything else. The photographic documentation on the outside of the body is in our office a standard prcedure and it's
maintained for the purpose of having the evidence for anyone else to look at and evaluate any indepent expert or what-
ever the circumstance may be. Anyone that comes to review has the opportunity to compare the documented injury by phot
-graphs and the described injuries or changes in the autopsy protocol. ( TT vol. IV p. 109-110) People's move for pro-
poped Exhibit 62 the photostatic copy of the original autopsy on Fredericka Denise Dixion with no objection by defense
counsel.( TT vol. IV p. 110,111-116) Exhibits 63 through 69 were admitted over no objection by defense counsel.( TT
Vol. IV p. 116-121) People's Exhibit Number 70 was admitted over no objections by the defense counsel depicting fur-
ther gun shot wounds and injuries in graphic detail.( TT vol. IV p. 122-130). When he did  the internal examination
in this case of Fredericka Dixion, gunshot wound labeled A there was— there was damage to— That bullet went through
the space between the ninth and tenth rib out here in the lower part of the right side of the chest cavity from the bel
-ly cavity. It perforated the edge of the lower lobe of the right lung. It perforated the right side, right lobe of the
liver because the liver domes underneath and the edge of the right lung goes like this. So as the bullet came it went
through the diaphragm, hit the lung then hits the diaphragm again and it damages the liver.( See TT vol. IV p.123-130)

4

The cause of death was a homicide because it involved the, the wounds that were sustained from a distance and physically impossible to be self-inflicted so they had to have been the result of some one else's purposeful act or action. The purposeful act is something that involves loading a firearm, pointing the firearm in someone's direction. Pulling the trigger. Discharging that firearm. These are all purposeful acts. So by definition this constitutes a homicide because all of these gunshot wounds had been the result of purposeful—multiple purposeful acts. ( TT vol. IV p. 129-130).

## ARGUMENT

DEFENDANT IS ENTITLED TO RELIEF FROM THE JUDGMENT OF
CONVICTIONS AND SENTENCE BECAUSE HE WAS DENIED DUE
PROCESS AND HIS SENTENCE AND CONVICTIONS IS THERE-
FORE INVALID WHERE THE TRIER OF FACT WAS  EXCITED
BY PASSION AND PREJUDICE CALCULATED BY THE PROSE-
CUTION'S PRESENTATION OF THE COLORED PHOTOS.


## A. ISSUE OF PRESERVATION:

MRE 103(a) Provide:

Error may not be predicated upon a ruling which admits or excludes evidence unless a Substantial right
of the party is affected,

and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or
motion to strike appears of record, stating the specific ground of objection, if the specific ground was not ap-
parent from the context: or

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the
evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before
trial, a party claim of error for appeal. See <u>People v Bettistea</u>, 173 Mich.App. 106, 434 NW 2d 138( 1988)

## B. STANDARD OF REVIEW:

A trial courts decision to admit or exclude evidence is reviewed for an abuse of discretion. <u>Wakin v Chamber-</u>
<u>lain</u>,467 Mich. 329,334,653 NW 2d 176( 2002); <u>People v Cervi</u>,270 Mich.App.603,717 NW 2d 356( 2006). See <u>U.S. v</u>
<u>McRae</u>,593 F.2d 700,707( C.A.5, 1979). A trial court abuses its discretion when its decision falls outside the
range of priciple out comes. <u>People v Babcock</u>,469 Mich.247,270;666 NW 2d 231( 2003); <u>People v Feezle</u>, 486 Mich.
184,192;783 NW 2d 67( 2010).

## C. DISCUSSION:

Generally, all relevant evidence is admissible at trial. <u>People v Aldrich</u>,246 Mich.App. 101, 631 NW 2d 67(2001).
In determining whether evidence is admissible under relevancy rule, court must determine materiality of the evi-
dence and its probative force. <u>People v Mills</u>,450 Mich.61,537 NW 2d 909(1995). Evidence is relevant if it has any
tendency to make the existence of fact that is of consequence to the determination of the action more or less pro-
bable than it would be without the evidence, all elements of a criminal offense are"in issue," and thus material,
when a defendant enters a plea of not guilty. <u>People v Aguwa</u>,245 Mich.App.1, 626 NW 2d 176(2001); <u>People v Vande-</u>
<u>vliet</u>,444Mich.52, 508 NW 2d 114(1993). See also <u>Mathews v U.S.</u>, 485 U.S. 58,108 S.Ct. 883,99 L.Ed 2d 54(1988).,
MCR 6.301(A). Even relevant evidence may be excluded if its probative probative value is substantially out weigh-
ed by the danger of unfair prejudice. <u>People v Houston</u>, 261 Mich.App.463,467(2004), MRE 403. " Unfair prejudice"
does not mean " damaging". <u>Bradbury v Ford Motor Co.</u>,123 Mich.App.179,185,333 NW 2d 214(1983). All evidence offe-
red by parties is " prejudiced" to some extent, but the fear of prejudice dose not generally render the evidence
inadmissible. <u>Mills</u>, Supra, at 537 NW 2d 910. Admission of gruesome photographs solely to arouse the sympathies

6

or prejudices of the jury may be error, requiring reversal. People v Ho,231 Mich.App178,188,585 NW 2d 357, 362-363 ( 1998); People v Eddington, 387 Mich. 551, 198 NW 2d 297( 1972).

MRE 403 provides that although relevant, evidence may be excluded if its probative value is substantially out weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. As applied to photographs, a court is to determine whether...[ the] photographs " substantially necessary or instructive to show material facts or condictions, or merely calculated to excite passion and prejudice" People v Falkner,389 Mich. 682,685(1973). see Eddington, supra.

Even if relevant, evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. People v Sabin( After Remand), 463 Mich.43,58(2000). This court has noted in the past that, by definition, all relevant evidence introduced against a defendant " is some what prejudicial to a defendant.... People v Magyar,250 Mich.App.408,416( 2002). Therefore, the question is not simply whether the evidence prejudiced defendant, but rather, whether the evidence is unfairly prejudicial. People v Ackerman, 257 Mich.App.434,442( 2003).

In this case, its clear and obvious the colored photographs is calculated to excite the passion and prejudice on the basis of the testimony that was elicited from Lt. Mark Gardner where Doctor Ljubisa  j. Dragovic, medical examiner corroborated the cause of death and manner of Ms. Frederica Dixion's death by his medical report of his findings.( TT vol. IV. p. 56-57, 105-108, 129-130)( see TT vol. IV. p. 56-57, People's number 17).

Defense counsel addressed the court in his objection of the photographs being more prejudicial in the above regard, meant to inflame the jury. ( TT vol. 1. p.5,6).

## D. THE COURT HAS AUTHORITY TO SET ASIDE CONVICTION AND SENTENCE AND GRANT RELIEF

If the court determines the convictions and sentence is invalid, the court has authority to set aside convictions where the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. As applied to photographs " substantially necessary or instructive to show material facts or conditions, or merely calculative to show material facts or conditions, or merely calculated to excite passion and prejudice. Falkner, supra, ; Eddington, supra, MCR 6.414(B), MCR 6.502(A), MCR 6.508(D)(3)(a)(b)(i)(iii). see Wainwright v Sykes, 433 U.S. 72,97 S.Ct. 2497,53 L.Ed 2d 594(1977)( habeas corpus action by state prisoner); United States v Frady, 456 U.S. 152, 102 S.Ct. 1584,71 L.Ed 2d 816(1982)( under 28 U.S.C. 2255).

The staff comment under MCR 6.501 indicates that subchapter 6.500 is the exclusive procedure for post appeal proceedings for a criminal defendant who has had an appeal by right or by leave who has unsuccessfully sought leave to appeal, or who is unable to file an application for leave to appeal because the time limits for doing so have expired.

In this case, Appellant has already filed an appeal of right.( see People v Edwards,465 Mich.941,639 NW 2d 257 ( 2002)). He is therefore not entitled to an appeal of right or by leave. See MCR 6.501. Since " the defendant is no longer entitled to appeal by right or by leave, the defendant may seek relief pursuant to the procedure set forth in subchapter 6.500." See MCR 6.429(B)(4).

Defendant seeking postconviction relief under MCR 6.500 must file a motion for relief from Judgment setting forth all of the grounds for relief sought. MCR 6.502(A).

7

.... Pursuant to MCR 6.508(D), the defendant has the burden of establishing entitled to the relief requested in his motion. The court may not grant a motion for relief from Judgment unless the defendant " demonstrates (a) good cause for failure to raise such grounds on appeal ", and (b) actual prejudice from the alleged irregularities that support the claim for relief. See MCR 6.508(D)(3)(a)-(b).

## E. Defendant Has Demonstrated Good Cause And Actual Prejudice

### (a) Good Cause

Although subchapter MCR 6.500 has been in effect for nearly three decades. Our Michigan Appellate Courts have never given the term " good cause " a precise meaning. See People v Reed,449 Mich.375,535 NW 2d 496 ( 1995). However, the commentary to MCR 6.508 ( which was relied on in Reed,supra, at 501 ) states that the ." cause and prejudice " standard is based on the United States v Frady,456 U.S.152,102 S.Ct.1584,71 L.Ed. 2d 816 ( 1982) and Wainright v Sykes, 433 U.S . 72, 97 S.Ct.2497,53 L.Ed 2d 594 ( 1977). Under those decisions, a federal court will not review a prisoner's claim that the State court has found procedurally defaulted unless the prisoner can demonstrate cause and prejudice. Wainwright, 433 U.S. at 87.

In Reed, supra, the Michigan Supreme Court agreed that " cause " can be established by proving ineffective assistance of appellate counsel pursuant to the standards set forth in Strickland v Washington,466 U.S. 668, 104 S.Ct.20 52,80 L.Ed 2d 674 ( 1984), or by showing that some external factor prevented counsel from previously raising the issue . See Reed, at 535 NW 2d 500. MCR 6.002, Murray v Carrier,477 U.S. 478, 106 S.Ct. 2639 at 2644,2645,91 L.Ed 2d 397 ( 1986) and Engle v Issac,456 U.S. 107,102 S.Ct. 1558 at 1573,71 L.Ed 2d 783( 1982).

In addition, the United States Supreme Court recently observed that " cause " requirement in relations to the above may be " waived " where there is a fundamental miscarriage of justice. See United States v Delo,115 S.Ct. 851,856 ; 130 L.Ed 2d 808 ( 1995); People v Reed, supra.

In the present case, Defendant contends his convictions and sentence is invalid and therefore entitled to relief. Defendant maintains that " good cause " for his failure to raise this issue in his appeal is satisfied where : 1) external factors prevented him from raising the issue on appeal : 2) ineffective assistance of appellate counsel prevented him from presenting the issue on appeal; and, 3) even if Defendant cannot demonstrate good cause, the court should address the merit of the issue because he suffered and continues to suffer from a miscarriage of Justice.

#### 1) External Factors:

External factors include showing that the factual or legal basis for a claim were notavailable to counsel , or that some interference by officials made compliance impractible. See Reed v Ross, 468 U.S. 1, 104 S.Ct. 2901- 2902,82 L.Ed 2d 1 ( 1984); Carrier,106 S.Ct. at 2639.

In Reed v Ross, the prisoner's failure to appeal a Jury instruction was excused because at the time, there was no question as to the instruction's validity. It was not questioned until years later and was eventually struck down by the United States Supreme Court in Mullaney v Wilbur,421 U.S. 684, 95 S.Ct. 1831,44 L.Ed 2d 508 ( 1975). The court held that the absolute lack of legal basis for the claim at the time the prior appeal was filed constituteed good cause for failing to raise the issue in the prior appeal.

In the present case, the Defendant's convictions was based largely on the needless presentation of cumulative evidence, that evidence that was calculated solely to arouse the sympathies or prejudices of the jury by the presentation and admission of gruesome photographs.

8

The record reflects the high potential danger of the probative value substantially outweigheing the defendant's rights to a fair trial pursuant to the United States Constitutions, Fifth Amend. and Fourteenth Amend.

During Jury Voir Dire pursuant to MCR 6.412 the record reflect several jurors might have a prblem with viewing the photographs. Two unidentified male and female jurors stated they think they may have a problem with viewing the photos.

And juror Johnson, the identified juror, stated: " **I don't know to be honest with you. I can't say ". " No. Because I mean I'm an engineer, no I'm fact driven so I don't know what the picture will do. That's an emotional thing, so I don't know what the picture would actually mean to me.** ( TT vol. I,p. 50,51 ). The prosecutor further elicited fro juror Jhonson if she showed them those pictures and telling them you're going to see some pictures, are they going to hold that against her ? Juror Jhonson answered no. ( TT vol. I,p. 51).(The question esoterically suggest who is juror Jhonson going to hold the photos against if not the prosecutor ? ).

Juror Messing was afraid they'll be sick to their stomach. And juror Deri shared that same sentiment. ( TT vol. I, p. 52,53).

So its clear these particular photographs carry a strong prejudicial impact other than showing the cause and manner of death. They were calculated to arouse passion and sympathies that would render unfair prejudice for an unjust determination in the finding of facts in the jury assessment in the jury room by such magnifying impression.

Since appellate counsel had the factual information necessary to raise the prejudicial photographs issue when he filed the appeal, he cannot possibly say he did not see that the trial counsel did not object to their admissions on the basis of their materiality and probative force. **Mills,**supra,537 NW 2d 909.

**Wainwright v Sykes,** held that a federal habeas petitioner who has failed to comply with a State's contemporaneous-objection rule at trial must show cause for the procedural default and prejudice attributable there to in order to obtain review of his defaulted constitutional claim. 433 U.S. at 87,97 S.Ct., at 2506. See FRE 103(a).

Note. MRE 103 is identical to our federal bretheren FRE 103.

Michigan Rule 103- **Original Proposal**

> **Proposed Text**

> **[ The proposed rule was adopted without change ]**

Committe Note

MRE 103 does not change prior Michigan law.

Impact on Prior Michigan Law

Subdivision (a). The statement of MRE 103(a) that error may not be predicated upon evidence ruling unless a substantial right of a party is affected is consistent with GCR 1963,529.1 which staes that evidence error will not result in reversal " unless refusal to take such action appears to the court inconsistent with substatial Justice. " See also M.C.L.A. § 769.26 which states a similar rule for criminal cases. See A. Issue of preservation on page 6 of this brief in reference to its provisions prior to 1978. Taylor v Lowe, 372 Mich.282,126 NW 2d 104 ( 1964); Case v Klute, 283 Mich.581,278 NW 721( 1939).

9

Because external factors prevented defendant from raising this issue on appeal, the court should address the merit of the claim especially where we see into the record an objection was made contemporaneous to the prosecution's contentions. MCR 6.508(D)(3); Reed v Ross; Murray v Carrier; People v Reed.

## 2) Ineffective Assiaitance of Counsel:

If indeed appellate counsel was aware of the factual information necessary to raise this above issue on appeal, Defendant submits counsel's failure to do so denied him his right to effective assistance of appellate counsel on appeal. Therefore, Defendant has demonstrated good cause for his failure to raise this issue on appeal. People v Reed, supra.

In order to establish a denial of the effective assistance of counsel guaranteed under the state and federal constitutions, a defendant must demonstrate that counsel's performance was deficient and that, under an objective standard of reasonableness, counsel made error so serious that counsel was not functioning as an attorney as guaranteed by the Sixth Amendment. Moreover, the defendant must overcome the presumption that the appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance. Jones v Barnes,463 U.S. 745,752, 103 S.Ct. 3308,3313,77 L.Ed 2d 987( 1983).

In the present case, defendant maintains his appellate counsel's failure to raise the prejudicial photograph issue where such objection was made on the record pursuant to MRE 103(a)(1). Such error under this fact situation is very serious where consel was not functioning as an attorney as guaranteed by the sixth Amendment," therefore defendant has demonstrated good cause for not raising this issue on his appeal.

When a defendant claims he is entitled to a new trial by setting aside convictions due to his attorney ineffective assistance, the defendant must show that but for counsel's failure to raise issue or deliberate by-passed the orderly procedure of the state courts by personal waiver of the claim amounting to " ' an intentional relinquishment or abandonment of a known right or privilege: " It is indeed a miscarriage of justice where such issue carry strong value. See Johnson v Zerbst,304 U.S. 458,464, 58 S.Ct. 1019,1023, 82 L.Ed 1461( 1938)); Wainwright v Sykes,supra, 433 U.S., at 87-88,97 S.Ct., at 2506-2507. At minimum, then, Wainwright v Sykes plainly implied that the defendant of a constitutional decision would, absent extrodinary circumstances, bind the habeas petitioner even if he had not personally waived that claim. See id., at 91, n.14, 97 S.Ct., at 2508, n. 14; Reed v Ross, supra., 468 U.S. 1,13, 104 S.Ct. 2901,2909. Beyond that, the court left open " for resolution in future decisions the precise definition of the cause-and-prejudice standard." 433 U.S., at 87,97 S.Ct. at 2507.

A number of courts have held that an attorney's failure to argue mitigating circumstances in an effort to reduce his client's sentence constituted ineffective assistance of counsel. For example, in Prichard v Lockhart, 990 F.2d 352,354( 8th cir. 1993), the court held that counsel was ineffective for his failure to object to the use of erroneous information at a sentencing hearing. Kubat v Thierat,867 F. 2d 351,368( 7th cir. 1989), the court held that counsel was ineffective for giving " grossly substandard, rambling and incoherent " argument at sentencing.

In this case, appellate counsel raised three arguments. The question becomes under assessment of the record do they hold more strength than the issue he fail to raise.( See Exhibit-A attached Brief).

As the court can clearly see into the record, the defense counsel objected to the admission of the colored photographs pursuant to MRE 403 concerns. Such objection is preserved under MRE 103 (a)(1) unless waived or deliberately by-passed by counsel's decision.

Since waiver is defined by legal definition as an intentional and voluntary surrender of some known right, which generally may either result from an express agreement or be infered from circumstances. See informed consent.

Defendant did nothing that would suggest he consented to waiver his constitutional right to appellate procedure to raise preserved issues thats on the record under the contemporaneous-objection Rule under Federal and State standard FRE 103(a)(1), MRE 103(a)(1). See Wainwright v Sykes, supra, 433,97 S.Ct. at 2507.

Moreover, since counsel failed to raise such issue that was preserved on record by trial counsel, defendant shall not be accountable for such waiver. Therefore, the defendant has satisfied the first prong or bar pursuant to MCR 6.508(a) by a showing of " good cause " for failure to raise such grounds on appeal or in the prior motion.

### 3) Miscarriage of Justice:

The court may waive the good cause requirement if it determines that the claim asserted constituted " a fundamental defect which inherently results in a complete miscarriage of Justice, " or if the party asserting the claim did not receive "the rudimentary demands of fair procedure." MCR 6.002,§ 6005.3( Longhofer, Michigan Court Rules Practice-Text( 3d ed.)), MCR 6.414. See Aldrich,supra., 631 NW 2d at 68. Also See Davis v United States, 417 U.S. 333,346(1974) Hill v United States,368 U.S. 424,428 ( 1962). Also see United States v Smith,844 F.2d,203,205-206( 5th cir. 1988).

Here, defendant maintains his convictions and sentence is based on materially prejudicial evidence. Chamberlain, supra., 467 Mich., 653 NW 2d 176., Cervi,supra., 270 Mich.App 717 NW 2d 356.

In Michigan, as in the federal courts, a plea of not guilty puts prosecution to its proofs regarding all element of the crime charged. MCR 6.301(A). Aguwa, supra,245 Mich.App., 626 NW 2d 176.; Vandervliet,supra.,444 Mich., 508 NW 2d 114. See also Mathews v U.S. 485 U.S. 108 S.Ct. 883. Prosecutor's duty is not only to use every legitimate means to bring about a just conviction, but to refrain from improper methods calculated to produce a wrongful conviction. Berger v United States,295 U.S. 78; 88, 55 S.Ct. 79 L.Ed 1311 ( 1935). See Ho,supra., 231 Mich.App. 585 NW 2d 357,362-363.; Eddington,387 Mich. 551,198 NW 2d 297.

Moreover, anything less than a new trial denies defendant the rudimentary demands of due process and a fair procedure because defendant was convicted on the basis of improper methods calculated to produce a wrongful conviction. Berger, supra., 295 U.S., 55 S.Ct. 79., Sabin,( After Remand), 463 Mich. 43,58.

### (b) Actual Prejudice

While the good cause requirement has never been clearly defined, the " actual prejudice " requirement is defined by MCR 6.508 (D)(3)(i)(iii). In the case of challenge to the conviction(s), " actual prejudice" standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a defendant must show both cause excusing his double procedural default and actual prejudice resulting from errors of which he complains. Frady, supra., 456 U.S., 102 S.Ct. 1585. See MCR 6.508(D)(3)(b)(iii). The court may waive the " good cause " requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime. MCR 6.508(D)(3)(b)(iv).

To the extent that they both require " but for " causation, the " actual prejudice " requirement under MCR 6.508 (D)(3)(b) appears to be equivalent to the prejudice test adopted by the United States Supreme Court in Strickland, supra., to establish ineffective assistance of counsel, in that under either test the defendant must show that, " but for " the error complained of, a " reasonable probability " exist that the results have been different. The"probability " requirement requires less than a preponderance of evidence. Agan v Singletary,12 F. 3d 1012,1018 ( 11th cir. 1994).

In the present case, defendant maintains his convictions is based on materially prejudicial evidence calculated to produce a wrongful conviction.

First, it is clear the jurors was affected by the prejudicial presentation of the photographs.( TT vol. 1, p. 52,53)

Secondly, the record indicates there were more than anoth photos of the deceased presented to arouse sympathies and prejudice. ( TT. vol. IV, p. 56,57, 109-110, 111-116,116-121, 122-130).Applying the same rational of Ho,supra., where the admission of gruesome photographs solely to aroude the sympathies or prejudices of the jury may be error, requiring reversal. 231 Mich.App., 585 NW 2d 357,362-363.

Since the defendant is entitled to both equal protection and due process under both federaland state constitutional laws. U.S.C.A. Const. Amend. 5,14 amd Mich. Const. 1963 Art 1, § 20; Art 6§ 10. Griffin v People of the state of illinoise,351 U.S. 12, 76 S,Ct. 585 (1956). See People v Reed, supra .

Finally , if the court is in " grave doubt " whether the error had substantially and injurious effect, the error cannot be deemed harmless and the court must find in favor of the defendant. See O'nein v McAninch, 115 S.ct. 992, 130 L.Ed 2d 947( 1995). " Grave doubt " in this context means that in the judge!s mind, the matter is so evenly balanced that the judge feels in virtual equipoise as to the harmlessness of the error. 130 L.Ed 2d at 951 id.

Accordingly, defendant meets the second prong under MCR 6.508(D)(3)(b) and therefore the court should address his Due Process issue in relations to the prejudicial photographs that was calculated to arouse sympathies and passions of the jury.( TT vol. 1,p.5, TT vol. 1,p. 49,50). Where such impact from the grusome photographs affected the jury the only remedy is to setaside convictions. MCR 6.508(D)(3)(i)(iii); MCR 6.414. See Aldrich, supra.; Chamberlain,467 Mich. 653 NW 2d 176; Cervi,supra.

### F. RELIEF REQUESTED

Based on the foregoing, this court should " grant " the relief requested in the motion for Relief from Judgment.


Dated:                                              Respectfully Submitted

                                                    Darrius McCrary
                                                    DARRIUS MARTRICE MCCRARY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIUS MARTICE MCCRARY,

Petitioner,

v.

STEVE RIVARD,

Respondent.

Case No. 14-cv-14485
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING PETITIONER'S MOTION FOR A STAY [4]
AND CLOSING CASE FOR ADMINISTRATIVE PURPOSES**

---

On November 21, 2014, Petitioner Darrius Martice McCrary filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. (Dkt. 1.) Shortly thereafter, he filed a motion to stay this case to allow him to exhaust state remedies for one of his claims. (Dkt. 4.) For the reasons that follow, the motion will be granted and the habeas petition will be held in abeyance pending exhaustion of state remedies.

## I.  BACKGROUND

Petitioner was convicted in Oakland County Circuit Court of first-degree murder (under two theories), Mich. Comp. Laws § 750.316, first-degree home invasion, Mich. Comp. Laws § 750.110a, and three counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to life imprisonment for the murder, seven to twenty years in prison for the home invasion, and two years in prison for possession of a firearm during the commission of a felony.

Petitioner appealed his convictions on grounds that: (1) the trial court deprived him of his right to present a defense by denying his request for a jury instruction on voluntary

manslaughter; (2) the prosecutor's comments on Petitioner's failure to present a defense violated his constitutional rights and shifted the burden of proof; and (3) the judgment of sentence improperly reflects two convictions for first-degree murder and felony firearm even though there was only one homicide. The Michigan Court of Appeals affirmed Petitioner's convictions, but vacated one conviction for felony firearm. *See People v. McCrary*, No. 308237, 2013 WL 2662752 (Mich. Ct. App. June 13, 2013). On November 25, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. McCrary*, 495 Mich. 901; 839 N.W.2d 470 (2013) (table).

On November 21, 2014, Petitioner filed his habeas petition, raising the same three issues that he presented to the state court. He also raises a fourth issue regarding the use of allegedly inflammatory photographs at trial. Petitioner claims that he raised this issue in a post-conviction motion for relief from judgment, which is pending in the state trial court. (Pet. at 11.) In his motion for a stay, filed on December 8, 2014, Petitioner asks the Court to hold his habeas petition in abeyance while he exhausts state remedies for his fourth claim.

## II. ANALYSIS

The doctrine of exhaustion of state remedies requires state prisoners to fairly present all their claims to the state courts before raising their claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This requirement is satisfied if a prisoner "invok[es] one complete round of the State's established appellate review process," including a petition for discretionary review in the state supreme court, "when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel*, 526 U.S. at 845, 847. Thus, to be properly exhausted, each habeas claim must have

2

been fairly presented to the state court of appeals and to the state supreme court. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009).

Petitioner alleges that he exhausted state remedies for his first three claims on direct appeal and that he is in the process of exhausting state remedies for his fourth claim. As such, his petition is a "mixed" petition of exhausted and unexhausted claims. Federal district courts ordinarily must dismiss a habeas petition containing any unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1982). But because Petitioner filed his petition nearly a year after the Michigan Supreme Court denied leave to appeal, dismissal of this case could result in a subsequent petition being barred by the one-year statute of limitations. *See* 28 U.S.C. § 2244(d).

In such a situation, the Supreme Court has authorized a "stay-and-abeyance" procedure in which a federal court stays an action and holds a habeas petition in abeyance while the petitioner returns to state court to exhaust state remedies for previously unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 275 (2005). After the petitioner exhausts state remedies, the district court can lift the stay and allow him to proceed in federal court. *Id.* at 275-76.

This stay-and-abeyance procedure is appropriate only in "limited circumstances." *Id.* at 277. However, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. "In such circumstances, the district court should stay, rather than dismiss, the mixed petition," because "the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions." *Id.*

3

As noted above, the one-year statute of limitations would pose an issue if this Court were to dismiss the Petition. And while Petitioner ultimately may not prevail on his unexhausted claim, he has already raised the issue in state court and he does not appear to be engaged in dilatory litigation tactics. Moreover, he alleges that "ineffective appellate counsel" was the cause for his failure to raise the issue on direct appeal. The Court therefore concludes that it is not an abuse of discretion to stay these proceedings while Petitioner continues pursuing his state remedies. Accordingly,

**IT IS ORDERED** that Petitioner's motion for a stay (Dkt. #4) is **GRANTED**.

**IT IS FURTHER ORDERED** that, if Petitioner is unsuccessful in state court and wishes to re-open this case, he must file an amended habeas corpus petition and a motion to re-open this case, within **ninety (90) days** of exhausting state remedies for the fourth claim. The motion and amended petition shall contain the same case number that appears on this order. Any failure to comply with the conditions of this stay could result in the dismissal of the habeas petition. *Calhoun v. Bergh*, 769 F.3d 409, 411 (6th Cir. 2014), *petition for cert filed*, No. 14-7246 (U.S. Nov. 7, 2014).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall close this case for administrative purposes. Nothing in this order shall be construed as an adjudication of Petitioner's claims.

> s/Laurie J. Michelson
> LAURIE J. MICHELSON
> UNITED STATES DISTRICT JUDGE

Dated:  January 27, 2015

4

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the
attorneys and/or parties of record by electronic means or U.S. Mail on January 27, 2015.

<u>s/Jane Johnson</u>
Case Manager to
Honorable Laurie J. Michelson

Daemus McCrary # 827472
Muskegon Correctional Facility
2400 S. Sheridan Dr.
Muskegon, MI 49442

F I L E D

OCT 20 2016

CLERK'S OFFICE
U.S. DISTRICT COURT

U.S. District Court
Eastern District of Michigan
Theodore Levin United States Courthouse
231 W. Lafayette Blvd.
Detroit, MI 48226