UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

81

DARRIUS MCCRARY,

       Petitioner,

v.

S. L. BURT,

       Respondent.
_____/

Case No. 14-cv-14485
Hon. Laurie J. Michelson
Mag. Judge David R. Grand



Mr. Bill Schutte
Attorney for Respondent
Michigan Attorney General
Habeas Corpus Division
P.O. Box 30217
Lansing, Michigan 48909
(517) 335-7021

Mr. Darrius McCrary
MDOC No. 827472
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, Michigan 49442
=================================

POOR QUALITY ORIGINAL

PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS

BRIEF IN SUPPORT OF AMENDED PETITION FOR HABEAS CORPUS

VERIFICATION

CERTIFICATE OF SERVICE

      BY: Darrius McCrary #827472
         Petitioner In Pro Per
         2400 S. Sheridan Drive
         Muskegon, Mich 49442

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIUS MCCRARY,

          Petitioner,

v.

S. L. BURT,

          Respondent.

Case No. 14-cv-14485
Hon. Laurie J. Michelson
Mag. Judge David R. Grand

_____/

## PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Darrius McCrary, in Pro Per, respectfully states:

1. Petitioner Darrius McCrary is a citizen of the United States, is a resident of the county of Pontiac, Michigan, and is currently imprisoned in the County of Muskegon, Michigan.

2. Petitioner Darrius McCrary is currently unconstitutionally detained and imprisoned by the Respondent, S. L. Burt, Warden at the Muskegon Correctional Facility, where Mr. McCrary is serving two (2) term(s) of life without the possibility of parole sentence(s) for First Degree Premeditated Murder and First Degree Felony Murder, and Two (2) years in prison for Felony Firearm imposed by Judge Colleen A. O'Brien of the Oakland County Circuit Court, after he was found guilty of First Degree Premeditated Murder, Felony Murder and, two (2) counts of Felony Firearm.

3. Petitioner McCrary has exhausted all state remedies available to him with regard to the Fifth, Sixth and Fourteenth Amendment Constitutional issues raised in the Amended Petition by taking the following steps:

    a.    During trial, Petitioner raised the claim that the Court committed error (which is reversible) in this case by refusing to instruct the jury as requested on voluntary manslaughter.

-1-

b.  Mr. McCrary raised the Fifth and Fourteenth Amendment claim concerning the trial prosecutor's direct comments on defendants McCrary's failure to present a defense and/or defense evidence to counter the government's proof, particularly as to intent mandates reversal of his convictions.

c.  Defendant's rights against double jeopardy under both State and Federal Constitutions were violated because the judgment of sentence contains two (2) counts of murder (First Degree Premeditated and First Degree Felony Murder) and two (2) companion counts of felony firearm in a case involving one homicide victim.

Mr. McCrary raised the Fifth and Fourteenth Amendment claims in the Michigan Court of Appeals.  The point headings of the first issue presented in his Brief on Appeal were:

I. THE COURT COMMITTED ERROR (WHICH IS REVERSIBLE) IN THIS CASE BY REFUSING TO INSTRUCT THE JURY AS REQUESTED ON VOLUNTARY MANSLAUGHTER, SUCH A RULING AND REFUSAL TO SO INSTRUCT THE JURY DENIED DARRIUS MCCRARY HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO FUNDAMENTAL DUE PROCESS, A FAIR TRIAL, TO TRIAL BY JURY/TO PROPERLY INSTRUCTED JURY AND THE RIGHT TO PRESENT A DEFENSE BECAUSE IT NEGATED HIS THEORY OF THE CASE REGARDING THE REAL, IF NOT ONLY DISPUTED ISSUE AT TRIAL; HIS INTENT.  THE RESULT HERE WAS A MISCARRIAGE OF JUSTICE MANDATING REVERSAL AND A NEW TRIAL.

BOTH VOLUNTARY AND INVOLUNTARY MANSLAUGHTER, ARE NECESSARILY INCLUDED OFFENSES OF THE CHARGE OF MURDER AND SHOULD BE INSTRUCTED UPON WHERE THERE IS AT LEAST SOME EVIDENCE (WHICH THERE CERTAINLY WAS OF VOLUNTARY MANSLAUGHTER IN THIS CASE) FROM WHICH A RATIONAL FACT FINDER/JURY COULD CONCLUDE THAT THE ACCUSED/DEFENDANT HAD COMMITTED (THAT THERE WAS REASONABLE DOUBT AS TO THE EXISTENCE/ELEMENT OF MALICE) THE CRIME OF MANSLAUGHTER RATHER THAN MURDER. PEOPLE V. MENDOZA, 468 MICH 527; 664 NW2D 685 (2003)

II. THE TRIAL PROSECUTOR'S DIRECT COMMENTS ON DEFENDANT MCCRARY'S FAILURE TO PRESENT A DEFENSE AND/OR DEFENSE EVIDENCE TO COUNTER THE GOVERNMENT'S PROOF, PARTICULARLY AS TO INTENT MANDATES REVERSAL OF HIS CONVICTIONS.  SUCH COMMENTS ARE PROHIBITED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION, MICHIGAN'S CONSTITUTION CONST. 1963, ART 1 § 17 AND STATUTE (MCL 600.2159).

THE PROSECUTOR'S COMMENTS AS TO THE DEFENSE FAILURE TO COUNTER THE GOVERNMENT'S CASE/PROOFS VIOLATED DARRIUS MCCRARY'S FIFTH/FOURTEENTH AMENDMENT PROTECTIONS UNDER THE UNITED STATES CONSTITUTION, AS THE STATEMENTS/COMMENTS DIRECTED THE JURY'S ATTENTION TO MR. MCCRARY'S DECISION TO REMAIN SILENT, NOT TO TAKE THE WITNESS STAND HIMSELF AND NOT TO TESTIFY IN HIS OWN DEFENSE (AS A WITNESS AGAINST HIMSELF) AND CERTAINLY SHIFTED THE BURDEN OF PROOF TO DEFENDANT, VIOLATING HIS RIGHT TO SIMPLY LEAVE THE ENTIRE BURDEN ON THE GOVERNMENT (A

FUNDAMENTAL RIGHT) TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT WITHOUT DEFENDANT BEING CALLED UPON TO DEFEND/RESPOND IN ANY WAY.

III. DEFENDANT'S RIGHTS AGAINST DOUBLE JEOPARDY UNDER BOTH OUR STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BECAUSE THE JUDGMENT OF SENTENCE CONTAINED TWO (2) COUNTS OF MURDER (FIRST DEGREE PREMEDITATED AND FIRST DEGREE FELONY MURDER) AND TWO (2) COMPANION COUNTS OF FELONY FIREARM IN A CASE INVOLVING ONLY ONE HOMICIDE VICTIM.  BOTH THE FEDERAL AND STATE CONSTITUTIONS PROHIBIT MULTIPLE CONVICTIONS AND PUNISHMENT FOR THE SAME OFFENSE. AMS V; CONST. 1963, ART 1 § 15.

d.  On June 13, 2013, the Michigan Court of Appeals affirmed in part, vacated in part, and remanded for amendment of the judgment of sentence. People v. Darrius McCrary, No. 308237. (attached as Appendix A to the accompanying Amended Brief in Support).  The opinion does not cite Estelle v. McGuire, or any of Estelle's progeny, and it does not cite or apply the "harmless beyond a reasonable doubt" standard from O'Neal v. McAninch, 513 US 432 (1995), where the constitutional error(s) are "structural in nature."

e.  Petitioner McCrary then timely filed an application for leave to appeal in the Michigan Supreme Court, in which he again raised the identical issues presented in this Amended Petition.  The Michigan Supreme Court denied leave to appeal in a Standard Order issued on November 13, 2013. People v. Darrius McCrary, No. 147473. (attached as Appendix B to the accompanying Amended Brief in Support).

f.  On November 21, 2014, Petitioner Darrius McCrary filed a pro se habeas corpus petition under 28 U.S.C. § 2254. (Dkt. 1).  Shortly thereafter, he filed a motion to stay this case to allow him to exhaust state remedies for one of his claims. (Dkt. 4).  On January 27, 2015, the Court granted Petitioner's motion for a stay, held his petition in abeyance pending exhaustion of state remedies, and closed this case for administrative purposes. (Dkt. 6).

g.  On November 7, 2014, Petitioner filed his first Motion for Relief from Judgment, raising an additional Fifth, Sixth and Fourteenth Amendment issue.  The point heading of the Relief from Judgment issue presented in his Brief, which will be renumbered to correspond with the appeal of right issues are:

IV. DEFENDANT IS ENTITLED TO RELIEF FROM JUDGMENT OF CONVICTIONS AND SENTENCE BECAUSE HE WAS DENIED DUE PROCESS AND HIS SENTENCE AND CONVICTIONS IS THEREFORE INVALID WHERE THE TRIER OF FACT WAS EXCITED BY PASSION AND PREJUDICE CALCULATED BY THE PROSECUTION'S PRESENTATION OF THE COLORED PHOTOS.

h.  On April 6, 2015, the trial court denied relief from judgment. People v. Darrius McCrary, No. 2011-237893-FC (Oakland County Circuit Court filed August 16, 2011). (attached as Appendix C to Amended Brief in Support).

i.   On October 29, 2015, the Michigan Court of Appeals denied leave to appeal. People v. Darrius McCrary, No. 329318. (attached as Appendix D to Amended Brief in Support).

j.   On September 6, 2016, the Michigan Supreme Court denied leave to appeal in a standard order. People v. Darrius McCrary, No. 500 Mich 853; 883 NW2d 753 (2016). (attached as Appendix E    to the Amended Brief in Support).

4. As set forth in the accompanying Amended Brief in Support, Darrius McCrary is being detained in violation of the Fifth, Sixth and Fourteenth Federal Constitution.

5. Darrius McCrary has has filed a previous Petition for Writ of Habeas Corpus, which was held in abeyance pending state court post-conviction remedies. The Amended Petition is filed within the 30 day requirement from the District Court March 28, 2017 Order and Petitioner has not filed in this or any other federal district court.

Respectfully submitted,

/s/ *Darrius McCrary*
Darrius McCrary
Petitioner In Pro Per

Date: April 19th 2017

## VERIFICATION

I Darrius McCrary declare under the penalty of perjury that the statements herein are true to the best of my knowledge, information and belief.

/s/ *Darrius McCrary*
Darrius McCrary
MDOC No. 827472
2400 S. Sheridan Drive
Muskwegon, Mich 49442

Date: April 19th 2017

-4-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIUS MCCRARY,

       Petitioner,

v.

S. L. BURT,

       Respondent.

_____/

Case No. 14-cv-14485
Hon. Laurie J. Michelson
Mag. Judge David R. Grand

Mr. Bill Schutte
Attorney for Respondent
Michigan Attorney General
Habeas Corpus Division
P.O. Box 30217
Lansing, Michigan 48909
(517) 335-7021

Mr. Darrius McCrary
MDOC No. 827472
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, Michigan 49442
==================================

BRIEF IN SUPPORT OF AMENDED PETITION FOR HABEAS CORPUS

BY: Darrius McCrary #827472
    Petitioner In Pro Per
    2400 S. Sheridan Drive
    Muskegon, Mich 49442

TABLE OF CONTENTS

TABLE OF CONTENTS                                                    i, ii

INDEX OF AUTHORITIES                                               iii-vii

STATEMENT OF QUESTIONS PRESENTED                                 viii - ix

STATEMENT OF FACTS                                                        1

STANDARD OF REVIEW AND HARMLESS ERROR ANALYSIS                  14, 15, 16

ARGUMENTS:

## I.

THE COURT COMMITTED ERROR (WHICH IS REVERSIBLE) IN THIS CASE BY REFUSING TO INSTRUCT THE JURY AS REQUESTED ON VOLUNTARY MANSLAUGHTER. SUCH A RULING AND REFUSAL TO SO INSTRUCT THE JURY DENIED DARRIUS MCCRARY HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO FUNDAMENTAL DUE PROCESS, A FAIR TRIAL, TO TRIAL BY JURY/TO PROPERLY INSTRUCTED JURY AND THE RIGHT TO PRESENT A DEFENSE BECAUSE IT NEGATED HIS THEORY OF THE CASE REGARDING THE REAL, IF NOT ONLY DISPUTED ISSUE AT TRIAL: HIS INTENT. THE RESULT HERE WAS A MISCARRIAGE OF JUSTICE MANDATING REVERSAL AND A NEW TRIAL.

BOTH VOLUNTARY AND INVOLUNTARY MANSLAUGHTER, ARE NECESSARILY INCLUDED OFFENSES OF THE CHARGE OF MURDER AND SHOULD BE INSTRUCTED UPON WHERE THERE IS AT LEAST SOME EVIDENCE (WHICH THERE CERTAINLY WAS OF VOLUNTARY MANSLAUGHTER IN THIS CASE) FROM WHICH A RATIONAL FACT FINDER/JURY COULD CONCLUDE THAT THE ACCUSED/DEFENDANT HAD COMMITTED (THAT THERE WAS REASONABLE DOUBT AS TO THE EXISTENCE/ELEMENT OF MALICE) THE CRIME OF MANSLAUGHTER RATHER THAN MURDER. PEOPLE V. MENDOZA, 468 MICH 527; 664 NW2D 685 (2003).          17

## II.

THE TRIAL PROSECUTOR'S DIRECT COMMENTS ON DEFENDANT MCCRARY'S FAILURE TO PRESENT A DEFENSE AND/OR DEFENSE EVIDENCE TO COUNTER THE GOVERNMENT'S PROOFS, PARTICULARLY AS TO INTENT MANDATES REVERSAL OF HIS CONVICTIONS. SUCH COMMENTS ARE PROHIBITED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION, MICHIGAN'S CONSTITUTION CONST. 1963, ART 1 § 17 AND STATUTE (MCL 600.2159).

THE PROSECUTOR'S COMMENTS AS TO THE DEFENSE FAILURE TO COUNTER THE GOVERNMENT'S CASE/PROOFS VIOLATED DARRIUS MCCRARY'S FIFTH/FOURTEENTH AMENDMENT PROTECTIONS UNDER THE UNITED STATES CONSTITUTION, AS THE STATEMENTS/COMMENTS DIRECTED THE JURY'S ATTENTION TO MR. MCCRARY'S DECISION TO REMAIN SILENT, NOT TO TAKE THE WITNESS STAND HIMSELF AND NOT TO TESTIFY IN HIS OWN DEFENSE (AS A WITNESS AGAINST HIMSELF) AND CERTAINLY SHIFTED THE BURDEN OF PROOF TO DEFENDANT, VIOLATING HIS RIGHT TO SIMPLY LEAVE THE ENTIRE BURDEN ON THE GOVERNMENT (A FUNDAMENTAL RIGHT) TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT WITHOUT DEFENDANT BEING CALLED UPON TO DEFEND/RESPOND IN ANY WAY.          29

## III.

DEFENDANT'S RIGHTS AGAINST DOUBLE JEOPARDY UNDER BOTH OUR STATE AND
FEDERAL CONSTITUTIONS WERE VIOLATED BECAUSE THE JUDGMENT OF SENTENCE
CONTAINS TWO (2) COUNTS OF MURDER (FIRST DEGREE PREMEDITATED AND
FIRST DEGREE FELONY MURDER) AND TWO (2) COMPANION COUNTS OF FELONY
FIREARM IN A CASE INVOLVING ONLY ONE HOMICIDE VICTIM.   BOTH THE
FEDERAL AND STATE CONSTITUTIONS PROHIBIT MULTIPLE CONVICTIONS AND
PUNISHMENT FOR THE SAME OFFENSE. AMS V; CONST. 1963, ART 1 § 15.          33

## IV.

DEFENDANT IS ENTITLED TO RELIEF FROM JUDGMENT OF CONVICTIONS AND
SENTENCE BECAUSE HE WAS DENIED DUE PROCESS AND HIS SENTENCE AND
CONVICTIONS IS THEREFORE INVALID WHERE THE TRIER OF FACT WAS EXCITED
BY   PASSION   AND   PREJUDICE   CALCULATED   BY   THE   PROSECUTION'S
PRESENTATION OF THE COLORED PHOTOS.                                      36

RELIEF REQUESTED                                                        48

INDEX OF AUTHORITIES

CASE                                                                    PAGE

Agan v. Singletary, 12 F.3d 1012, 1018 (11th Cir. 1994)                      46

Arizona v. Fulminante, 499 US 279; 111 S.Ct 1246; 113 L.Ed.2d 302 (1991)    27

Berger v. United States, 295 US 78; 55 S.Ct 79 L.Ed 1311 (1935)             46

Boddie v. Connecticut, 401 US 371; 91 S.Ct 780; 28 L.Ed.2d 113 (1971)       19

Bradbury v. Ford Motor Co., 123 Mich App 179, 185; 333 NW2d 214 (1983)      36

Brecht v. Abrahamson, 507 US 619 (1993)                                  15, 16

Case v. Klute, 283 Mich 581; 278 NW 721 (1938)                              42

Chapman v. California, 386 US 18; 87 S.Ct 824; 17 L.Ed.2d 705 (1967)        26

Cheek v. United States, 498 US 192; 111 S.Ct 604; 112 L.Ed.2d 617 (1991)    26

Crane v. Kentucky, 476 US 683; 106 S.Ct 2142; 90 L.Ed.2d 636 (1986)         24

Cullen v. Pinholster, 563 US 170, 182 (2011)                             14, 15

Davis v. United States, 417 US 333, 346 (1974)                              45

Engle v. Issac, 456 US 107; 102 S.Ct 1558; 71 L.Ed.2d 783 (1982)           40

Estelle v. McGuire, 502 US 62; 112 S.Ct 475; 116 L.Ed.2d 385 (1991)     20, 24

Ferrazza v. Mintzes, 735 F.2d 967 (6th Cir. 1985)                          26

Gienn v. Dallman, 686 F.2d 418 (6th Cir. 1982)                             26

Green v. Fisher, 132 S.Ct 38, 44 (2011)                                     14

Griffin v. Illinois, 351 US 12; 76 S.Ct 585 (1956)                         47

Hill v. United States, 368 US 424, 428 (1962)                              45

In re Winship, 397 US 358; 90 S.Ct 1068; 25 L.Ed.2d 308 (1970)             30

Johnson v. Zerbst, 304 US 458; 58 S.Ct 1019; 82 L.Ed 1461 (1938)           44

Jones v. Barnes, 463 US 745; 103 S.Ct 3308; 77 L.Ed.2d 987 (1983)          43

Keeble v. United States, 412 US 205; 93 S.Ct 1993; 36 L.Ed.2d 844 (1973)   26

Kubat v. Thierat, 867 F.2d 352, 368 (7th Cir. 1989)                        44

Matthews v. United States, 485 US 58;
        108 S.Ct 883; 99 L.Ed.2d 54 (1988)                          26, 36, 45

Metrish v. Lancaster, 133 S.Ct 1781, 1786 n.2 (2013)                                  14

Morissette v. United States, 342 US 246; 72 S.Ct 240; 96 L.Ed 288 (1952)            26

Mudge v. Macomb Coubty, 458 Mich 87 (1998)                                          19

Mullane v. Central Hanover Trust Co, 339 US 306
            70 S.Ct 652; 94 L.Ed. 865 (1950)                                         19

Mullaney v. Wilbur, 421 US 684; 95 S.Ct 1881; 44 L.Ed.2d 508 (1975)                 40

Murray v. Carrier, 477 US 478; 106 S.Ct 2639; 91 L.Ed.2d 397 (1986)                 40

O'Neal v. McAninch, 513 US 432; 115 992; 130 L.Ed.2d 947 (1995)           15, 16  47

People v. Ackerman, 257 Mich App 434, 442 (2003)                                    37

People v. Aguwa, 245 Mich App 1; 626 NW2d 176 (2001)                         36, 45

People v. Aldrich, 246 Mich App 101; 631 NW2d 67 (2001)                             36

People v. Bairfoot, 117 Mich App 225; 323 NW2d 302 (1982)                           22

People v. Beach, 429 Mich 450; 418 NW2d 861 (1988)                                  27

People v. Bettistea, 173 Mich App 106; 434 NW2d 138 (1988)                          29

People v. Bigelow, 229 Mich App 218; 581 NW2d 744 (1988)                            34

People v. Carines, 460 Mich 750; 597 NW2d 130 (1999)                         30, 32

People v. Cervi, 270 Mich App 603; 717 NW2d 356 (2006)                              45

People v. Clark, 243 Mich App 449; 622 NW2d 344 (2000)                              33

People v. Cornell, 466 Mich 335; 646 NW2d 127 (2002)                         20, 22

People v. Eddington, 387 Mich 551; 198 NW2d 297 (1972)                       37, 46

People v. Edwards, 465 Mich 941; 639 NW2d 257 (2002)                                33

People v. Falkner, 389 Mich 682, 685 (1973)                                         37

People v. Fortson, 202 Mich App 13; 507 NW2d 763 (1993)                             22

People v. Green, 131 Mich App 232; 345 NW2d 676 (1983)                              31

People v. Ho, 231 Mich App 178, 188; 585 NW2d 357, 362-363 (1998)                   37

People v. Holmes, 111 Mich 364; 69 NW 501 (1896)                                    19

People v. Houston, 261 Mich App 463, 467 (2004)                                     36

People v. Joezell Williams, 265 Mich App 68; 692 NW2d 722 (2005)             33, 34

People v. Lukity, 460 Mich 484; 596 NW2d 607 (1999)                          26

People v. Magyar, 250 Mich App 408, 416 (2002)                              37

People v. Mills, 450 Mich 61; 537 NW2d 909 (1995)                          36

People v. Mendoza, 468 Mich 527; 664 NW2d 685 (2003)              passim

People v. Moore, 189 Mich App 315; 472 NW2d 1 (1991)              20, 21

People v. Morton, 423 Mich 650; 377 NW2d 798 (1985)                      34

People v. Onesto, 203 Mich 490; 170 NW 338 (1918)                        19

People v. Pouncey, 437 Mich 382; 471 NW2d 346 (1991)        19, 22, 25

People v. Reed, 449 Mich 375; 535 NW2d 496 (1995)                      39

People v. Richardson, 409 Mich 126; 293 NW2d 332 (1980)              22

People v. Rochowiak, 416 Mich 235; 330 NW2d 669 (1983)              23

People v. Roper, 286 Mich App 77; 777 NW2d 483 (2009)              26

People v. Sabin (After Remand), 463 Mich 43, 58 (2000)            37, 46

People v. Vandevliet, 444 Mich 52; 508 NW2d 114 (1993)          36, 46

People v. Van Dorsten, 441 Mich 540, 545; 494 NW2d 737 (1993)      29

People v. Van Smith, 388 Mich 457; 203 NW2d 94 (1972)              28

People v. White, 15 Mich App 527; 166 NW2d 639 (1969)              25

People v. Williams, 265 Mich App 68; 692 NW2d 722 (2005)          33

People v. Wolfe, 440 Mich 508; 489 NW2d 748 (1992)                    26

People v. Younger, 380 Mich 678; 158 NW2d 493 (1968)                  19

Prichard v. Lockhart, 990 F.2d 352, 354 (8th Cir. 1993)              44

Reed v. Ross, 468 US 1; 104 S.Ct 2901; 82 L.d.2d 1 (1984)        40, 44

Renio v. Lett, 559 US 766, 773 (2010)                                  15

Strauss v. United States, 376 F.2d 416 (5th Cir. 1967)              26

Strickland v. Washington, 466 US 668; 104 S.Ct 2052; 80 L.Ed.2d 674 (1984)  39

Summer v. Mata I, 449 US 539 (1981)                                  16

Taylor v. Kentucky, 436 US 478; 98 S.Ct 1930; 56 L.Ed.2d 468 (1978)  26

Taylor v. Lowe, 372 Mich 282; 126 NW2d 104 (1964)                           42

United States v. Crutchfield, 547 F.2d 496 (9th Cir. 1977)                  26

United States v. Delo, 115 S.Ct 851, 856; 130 L.Ed.2d 808 (1995)           40

United States v. Frady, 456 US 152; 102 S.Ct 1584; 71 L.Ed.2d 816 (1982) 38, 39

United States v. Hicks, 748 F.2d 854 (4th Cir. 1984)                        26

United States v. Monger, 185 F.3d 574 (6th Cir. 1999)                       27

United States v. Olano, 503 US 725 (1993)                                   30

United States v. Smith, 844 F.2d 203, 205-206 (5th Cir. 1988)              45

United States v. Young, 470 US 1, 13 (1985)                                 29

Vujosevic v. Rafferty, 844 F.2d 1023 (3rd Cir. 1988)                        26

Wainwright v. Sykes, 433 US 72; 97 S.Ct 2497; 53 L.Ed.2d 594 (1977)  38, 39, 44

Wakin v. Chamberlain, 467 Mich 329, 334; 653 NW2d 176 (2002)               45

Wellar v. People, 30 Mich 13 (1874)                                         19

## CONSTITUTIONS, STATUTES, COURT RULES & OTHER AUTHORITIES

28 U.S.C. § 2254(d)(1)                                                   14, 16

28 U.S.C. § 2254(d)(2)                                                       15

28 U.S.C. § 2254(e)(1)                                                       15

CJI 16.9                                                                     23

CJI 18.8                                                                     23

FRE 103(a)                                                             36, 42, 45

GRC 1963, 529.1                                                              42

MCL 600.2159                                                             29, 30

MCL 750.227b                                                                 34

MCL 750.316                                                                  20

MCL 750.317                                                                  20

MCL 750.321                                                              18, 20

MCL 768.32                                                    20

MCL 769.26                                                    42

MCR 6.002                                               40, 45

MCR 6.301(A)                                                  45

MCR 6.412                                                     41

MCR 6.414                                            38, 45, 47

MCR 6.429(B)(4)                                              39

MCR 6.500                                                    38

MCR 6.501                                                    38

MCR 6.502(A)                                                 38

MCR 6.508(D)                                                 39

MCR 6.508(D)(3)                                             46

MCR 6.508(D)(3)(a)-(b)                              39, 46, 47

MCR 6.508(D)(3)(a)(b)(i)(iii)                          38, 46

MCR 6.508(D)(3)(b)                                         46

Mich. Const. 1963, Art 1 § 15                               33

Mich. Const. 1963, Art 1 § 17                               29

Mich. Const. 1963, Art 1 § 20                               47

Mich. Const. 1963, Art 6 § 10                               47

MRE 103(a)                                          42, 43, 44

MRE 403                                                     36

US Const. Ams V                          24, 29, 31, 33, 41, 47

US Const. Ams VI                                        24, 43

US. Const. Ams XIV                         19, 24, 29, 41, 47

vii

STATEMENT OF QUESTIONS PRESENTED

## I.

WHETHER THE COURT COMMITTED ERROR (WHICH IS REVERSIBLE) IN THIS CASE BY REFUSING TO INSTRUCT THE JURY AS REQUESTED ON VOLUNTARY MANSLAUGHTER. SUCH A RULING AND REFUSAL TO SO INSTRUCT THE JURY DENIED DARRIUS MCCRARY HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO FUNDAMENTAL DUE PROCESS, A FAIR TRIAL, TO TRIAL BY JURY/TO PROPERLY INSTRUCTED JURY AND THE RIGHT TO PRESENT A DEFENSE BECAUSE IT NEGATED HIS THEORY OF THE CASE REGARDING THE REAL, IF NOT ONLY DISPUTED ISSUE AT TRIAL: HIS INTENT. THE RESULT HERE WAS A MISCARRIAGE OF JUSTICE MANDATING REVERSAL AND A NEW TRIAL.

BOTH VOLUNTARY AND INVOLUNTARY MANSLAUGHTER, ARE NECESSARILY INCLUDED OFFENSES OF THE CHARGE OF MURDER AND SHOULD BE INSTRUCTED UPON WHERE THERE IS AT LEAST SOME EVIDENCE (WHICH THERE CERTAINLY WAS OF VOLUNTARY MANSLAUGHTER IN THIS CASE) FROM WHICH A RATIONAL FACT FINDER/JURY COULD CONCLUDE THAT THE ACCUSED/DEFENDANT HAD COMMITTED (THAT THERE WAS REASONABLE DOUBT AS TO THE EXISTENCE/ELEMENT OF MALICE) THE CRIME OF MANSLAUGHTER RATHER THAN MURDER. PEOPLE V. MENDOZA, 468 MICH 527; 664 NW2D 685 (2003)?

## II.

WHETHER THE TRIAL PROSECUTOR'S DIRECT COMMENTS ON DEFENDANT MCCRARY'S FAILURE TO PRESENT A DEFENSE AND/OR DEFENSE EVIDENCE TO COUNTER THE GOVERNMENT'S PROOFS, PARTICULARLY AS TO INTENT MANDATES REVERSAL OF HIS CONVICTIONS. SUCH COMMENTS ARE PROHIBITED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION, MICHIGAN'S CONSTITUTION CONST. 1963, ART 1 § 17 AND STATUTE (MCL 600.2159).

THE PROSECUTOR'S COMMENTS AS TO THE DEFENSE FAILURE TO COUNTER THE GOVERNMENT'S CASE/PROOFS VIOLATED DARRIUS MCCRARY'S FIFTH/FOURTEENTH AMENDMENT PROTECTIONS UNDER THE UNITED STATES CONSTITUTION, AS THE STATEMENTS/COMMENTS DIRECTED THE JURY'S ATTENTION TO MR. MCCRARY'S DECISION TO REMAIN SILENT, NOT TO TAKE THE WITNESS STAND HIMSELF AND NOT TO TESTIFY IN HIS OWN DEFENSE (AS A WITNESS AGAINST HIMSELF) AND CERTAINLY SHIFTED THE BURDEN OF PROOF TO DEFENDANT, VIOLATING HIS RIGHT TO SIMPLY LEAVE THE ENTIRE BURDEN ON THE GOVERNMENT (A FUNDAMENTAL RIGHT) TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT WITHOUT DEFENDANT BEING CALLED UPON TO DEFEND/RESPOND IN ANY WAY?

## III.

WHETHER DEFENDANT'S RIGHTS AGAINST DOUBLE JEOPARDY UNDER BOTH OUR STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BECAUSE THE JUDGMENT OF SENTENCE CONTAINS TWO (2) COUNTS OF MURDER (FIRST DEGREE PREMEDITATED AND FIRST DEGREE FELONY MURDER) AND TWO (2) COMPANION COUNTS OF FELONY FIREARM IN A CASE INVOLVING ONLY ONE HOMICIDE VICTIM. BOTH THE FEDERAL AND STATE CONSTITUTIONS PROHIBIT MULTIPLE CONVICTIONS AND PUNISHMENT FOR THE SAME OFFENSE. AMS V; CONST. 1963, ART 1 § 15?

## IV.

WHETHER DEFENDANT IS ENTITLED TO RELIEF FROM JUDGMENT OF CONVICTIONS AND SENTENCE BECAUSE HE WAS DENIED DUE PROCESS AND HIS SENTENCE AND CONVICTIONS IS THEREFORE INVALID WHERE THE TRIER OF FACT WAS EXCITED BY PASSION AND PREJUDICE CALCULATED BY THE PROSECUTION'S PRESENTATION OF THE COLORED PHOTOS?

## STATEMENT OF FACTS

This is a criminal case wherein the Defendant/Appellant, DARRIUS MARTICE MCCRARY, was charged with and later convicted by a jury in Oakland County on one count of first-degree premeditated murder, one count of first-degree felony murder, one count of first-degree home invasion, as well as a separate count of possession of a firearm during the commission or attempted commission of a felony (hereinafter referred to simply as felony firearm) conviction, one count or charge as to each primary felony. Defendant/Appellant McCrary was acquitted, found not guilty on one count of assault with intent to murder and accompanying felony firearm charge. (Warrant, Crim. Info., Verdict Form & VI 4) [1]

Mr. McCrary was sentenced on January 17, 2012, to serve terms of life in prison without parole on the first degree pre-meditated murder conviction and another such term on the first degree felony murder conviction. As to all matters Darrius McCrary was sentenced by the trial court as follows:

- First-degree premeditated murder-Life in prison without parole
- First-degree felony murder-Life in prison without parole
- First-degree home invasion-7 to 40 years

Each of the three (3) prison terms listed above was/were to run concurrently (but as if one sentence), each was to be served consecutively and following three (3) felony firearm convictions which were (the felony firearm convictions) to be served concurrently with each other [as if one two (2) year sentence], consecutive and prior to the three (3) primary felony sentences. (Judgment of Sentence/Amended Judgment and Sent. Trans.) The Judgment of Sentence was subsequently amended to reflect just

**JOHN D. LAZAR**
ATTORNEY AND COUNSELOR

2304 E. ELEVEN MILE RD.
ROYAL OAK, MI 48067-2338

(248) 543-0390

---

[1] Trial transcript volume numbers (1-6) have been converted to roman numerals (I-VI).

one or a single first-degree murder conviction and sentence based on both the theory of premeditated murder and felony murder. However, that Amended Judgment of Sentence still lists two (2) convictions based on one homicide and failed to take off or remove one (1) felony firearm conviction/sentence. Note too that Mr. McCrary was charged with assault with intent to murder the homicide victim's son (and felony firearm), but was acquitted/found not guilty on the charge(s). It is from these convictions and sentences (Judgment of Sentence/Amended Judgment) that Darrius McCrary has brought this appeal as a matter of right.

It is/was charged herein that Darrius McCrary entered the home of his former (?) "girlfriend"-Fredericka Dixon with whom McCrary had been in a long term relationship and with whom until about three (3) months prior to her death, he resided. (II 51 & 54) Her death was apparently the result of McCrary shooting her with a handgun, following his breaking into her home. The jury convicted McCrary accordingly. (VI 4)

The government's first and primary witness was Mackford M. Hall, III, the 19-year-old son of the deceased (subject of these murder charges), Fredericka Dixon. (II 48-49) Mackford M. Hall, III (hereinafter primarily referred to simply as "Hall") testified that his mother, Fredericka Dixon had dated Darrius McCrary and had in the past lived with him for a period of years. (II 49) One witness (Sharon Stone) testified they had been in a relationship for 6 or 8 years. (V 13) In fact, McCrary had only ceased living with Hall, his mother and siblings (if Darrius had in fact completely ceased doing so) approximately three (3) months before his mother's death on November 25, 2010. (II 51 & 54) Hall lived at the 21244 Westview Avenue address in Royal Oak Township, a duplex, with his mother, brother, sister (and Darrius McCrary living with them until about

three (3) months prior to his mother's death). (II 51 & 54-58) Hall said that after ending the relationship with McCrary, his mother dated Fred Wilkerson up until her death, November 25, 2010. (II 58-59) He also knew Mr. McCrary's car to be a burgundy Grand Prix or Grand Am. (II 60)

On Thanksgiving Day November 25, 2010, relatives/family started to come over around 3:00 p.m. and in total there were about seven (7) [or ten (10)] people over for the holiday. At around 8:00 p.m. everyone was gone, but for Hall and his mother. (II 63-64 & 114-115) Hall himself did not remember seeing Fred Wilkerson at the house on Thanksgiving, for dinner or otherwise. (II 114-115) Hall indicated he went upstairs to play video games; his mother, to the best of his knowledge, was in the basement (her bedroom). (II 64) When he came down from upstairs to the kitchen to heat some food, Hall heard a "jingling" at the front door like someone was trying to open it. Looking through the peephole he claims Darrius McCrary was outside. (II 65-67)

Hall believes McCrary (on the porch) was on a phone/cell calling or talking to someone. (II 66-68 & 71) Hall seeing this checked to make sure the door was locked, it was and he went into the kitchen. (II 72) At the same time he yelled down to his mother that McCrary was outside, she told him to lock the door and Hall replied he had already done so, continued warming his food and went upstairs. (II 72) Hall came back down about six (6) minutes later to get his food at about 8:30 p.m., looked out the window again and saw McCrary standing under the light on the sidewalk. (II 73 & 75-76) Hall and his mother passed each other as he was getting his food and she appeared to be on the phone coming up from the basement. (II 79) As she went into the living room Hall heard a bang, a loud noise like someone kicked the door in. (II 80)

JOHN D. LAZAR
ATTORNEY AND COUNSELOR

2304 E. ELEVEN MILE RD.
ROYAL OAK, MI 48067-2338

(248) 543-0390

Although not timing it, Hall said he heard a noise, about 30 seconds to a minute after his mother passed him. When he went to see about the noise, his mother was running back, a gun was fired and she fell to the ground. Hall claimed that after his mother went down, McCrary came/went after him. (II 81) Hall claimed that as he came out of the kitchen he saw three (3) shots being fired, his mother falling to the floor/ground face first having been shot in the back. (II 81-82) Mr. Hall testified that he attempted to go grab a knife, but thought he would be shot in the back. (II 82)

Hall said McCrary came chasing after him with a gun pointed at the top half of his body. Hall went from the dining room to kitchen and ran downstairs with McCrary following while he was looking for something to defend himself with, but found nothing. Downstairs Hall said Darrius aimed the gun up at his head and pulled the trigger; he believed the gun jammed because fire came out, but no bullets. (II 84-85) Note here that the jury acquitted Darrius McCrary (found him not guilty) on the charge/count of assault with intent to commit murder based on Hall's claim/testimony that McCrary aimed at his head, pulled the trigger, but no bullet came out. (II 92)

After his mother passed him in the kitchen Hall "heard the jingle" and heard her yelling "noodle" [her nickname for him] as the door was kicked in. (II 95-96)

Hall acknowledged his mother had a long term serious relationship (5 years, perhaps more) with Darrius McCrary. Hall had been out of his mother's home for some time. McCrary was living with Hall's mother at her house for about three (3) years before Hall moved back in. (II 98-100) Hall stated it was about three (3) months before the shooting incident/homicide on Thanksgiving that McCrary had moved out, although he had not checked a calendar. (II 108) While describing the house, Hall indicated his

JOHN D. LAZAR
ATTORNEY AND COUNSELOR

2304 E. ELEVEN MILE RD.
ROYAL OAK, MI 48067-2338

(248) 543-0390

4

and his siblings' rooms were upstairs; his mother had her bedroom (slept) in the basement. It was a full room/bedroom set up for her as such down there. (II 109)

Hall acknowledged being aware his mother and Darrius continued speaking by phone after their breakup and that they would also see each other. Hall denied being aware McCrary would come over and spend the night with his mother after their so called breakup (and Darrius moved out). (II 111) Although Hall claims to have never personally seen McCrary in the home after Darrius moved out. He did concede that because his room was upstairs he would not necessarily have even known or been aware if McCrary was downstairs with his mother in her basement room when he (Hall) was upstairs, particularly when upstairs sleeping. Hall agreed there may well have been nights when McCrary spent the night and he (Hall) did not know it. (II 112) Hall would not necessarily have seen McCrary's car because it could have been parked in a number of different places. McCrary could easily have gone through the side door or backdoor to the basement and been with his mother. Nor was Hall aware of the times his mother went/would go to spend the night with McCrary at his apartment. (II 113)

After everyone left on Thanksgiving, including his sister Jasmine, Hall went upstairs to play video games and his mother went downstairs to her basement bedroom. He had no idea what she was doing. (II 116-117) When Hall came down hungry later he heard a "jingle" at the door, he was right next to the door. (II 118-121) Hall indicated candidly he was not at all surprised to see Darrius at the front door. He completed preparing his food and again went upstairs. (II 121) About six (6) minutes later he went back down to get his food. (II 121-123) As Hall was getting his food, his mother came up from the basement with her phone to her ear. (II 127-128)

JOHN D. LAZAR
ATTORNEY AND COUNSELOR

2304 E. ELEVEN MILE RD.
ROYAL OAK, MI 48067-2338

(248) 543-0390

5

At some point Hall said he pulled the shade down, either the first or second time he saw McCrary outside. (II 129) He did not recall testifying earlier it was on his second trip downstairs he looked out the window and pulled the shade down after he seeing McCrary outside. (II 129-130)

At trial Hall said he went to the kitchen and then back to look out of the front bay window. (II 131) He remembered looking out the window, but did not remember whether he looked out before or after going into the kitchen. While in the kitchen Hall heard a boom, bang and then proceeded out of the kitchen, leaving his food on the table; he immediately stepped into the dining room. On direct examination Hall indicated after hearing the bang he immediately ran and looked toward the front door at which time he claims he saw McCrary firing shots at his mother. (II 137-138)

The police did not arrive until 30 minutes later, once they arrived the police would not let Hall back inside. It was another 30 minutes after the police appeared before an ambulance arrived. (II 140) Hall testified he remembered telling a deputy that his mother came from the basement, passed by him and then he heard seven (7) gunshots. Apparently Hall never told the police that he saw Darrius firing three (3) shots(?). (II 142) The deputies told Hall to write down everything he remembered in a statement and to read it over, which is what Hall did. (II 143)

Hall agreed that in the statement he wrote, "She came upstairs from the basement, passed me in the kitchen. Then gunshots, seven gunshots and shot two at me." (II 145) At trial Hall claimed to have been "messed up" when he wrote his statement. Apparently Hall also had told two (2) different deputies that he heard seven (7) shots although he testified at trial he saw three (3) gunshots. (II 145-146; see II 154-

JOHN D. LAZAR
ATTORNEY AND COUNSELOR

2304 E. ELEVEN MILE RD.
ROYAL OAK, MI 48067-2338

(248) 543-0390

6

155) After seeing what happened in the living room Hall did not run over to (assist/check) his mother because he claimed McCrary confronted him with a gun pointed at him. Hall asserted McCrary fired (the gun) at him twice while he was in the basement. Hall had been standing near the kitchen entrance when he heard a very loud bang in the kitchen. (II 147) Hall ran through the house with the intention of going into the basement passing the backdoor because it was he said, closed (and probably locked). (II 147-148)

Hall's statement read: "She [Ms. Dixon/his mother] came upstairs from the basement, passed me in the kitchen. I then (sic) gunshots, seven gunshots and shot two at me." (II 145) At trial Hall did not deny writing that, but stated, "I was messed up when I wrote it." (II 145) At trial Hall testified he saw three (3) gunshots. (II 145-146) McCrary never yelled at them, never threatened to kill either Hall or his mother. (II 145-148) Hall claims McCrary fired two (2) shots at him from five feet or a little further away, but nothing (no bullets) came out of the gun. (II 150)

Hall remembered the defense asking whether he told the deputies he had seen his mother being shot or not (?). He didn't recall if he put that in his written statement. He asserted that McCrary shot at him and his mother (and wrote that in his statement). (II 165-166) Hall was not surprised to see McCrary at the house although he did not invite him, thinking McCrary was there to get food because it was Thanksgiving. (II 167-168)

Hall testified he never heard a knock on the door after the "jingle", but on cross-examination, admitted he was not sure and that he may have heard a knock, repeating, "I don't know, I was messed up." (II 170-171)

The first law enforcement person on the scene of this homicide was Oakland County Sheriff's Sergeant (Sgt.) Saman Marzban, assigned to the Royal Oak Township substation. Arriving at the scene Marzban saw a black man in his mid to late teens (Mackford Hall) who was hysterical, screaming, while going back and forth in front of the residence declaring someone had just shot his mom. (III 14) Sgt. Marzban upon entering the house observed a gunshot victim (Ms. Dixon) lying on her back, her eyes open and with an obvious gunshot wound to her abdomen. She was unresponsive, no pulse and not breathing on the floor about 10 to 12 feet away from the door itself. When Marzban entered there were other women inside—at least one applying pressure to Fredericka Dixon's abdominal wound. (III 15-16, 18 & 22-24)

Marzban testified that a deadbolt lock on the front door was broken and on the ground, as was the plate that attached to the wall and door with wood splintered along the door jam (consistent with the door being forced open). (III 25-28) William Foreman also gave testimony as to front door damage which he photographed. (III 53-58) Marzban also spoke with and took a statement (including a written statement) from Jalen Harris next door. (III 29-30)

Eddie Flounory, Jr., lived directly across the street from Fredericka Dixon. While Dixon lived at the house (duplex) across the street for about three (3) years, Flounory had lived at his residence 35 years. (III 111) Mr. Flounory knew/had known McCrary from the neighborhood for years (much longer than he had known Ms. Dixon) and would see McCrary at Fredericka's house regularly. He knew McCrary lived there with her, but didn't know/recall how long. He believed McCrary moved in a few weeks after Fredericka Dixon, but did not know when (or if he had) he moved out. (III 116) Eddie

JOHN D. LAZAR
ATTORNEY AND COUNSELOR

2304 E. ELEVEN MILE RD.
ROYAL OAK, MI 48067-2338

(248) 543-0390

8

Flounory also testified that on Thanksgiving 2010 he was at home with his family and grandchildren ready to eat when around 3:30 p.m. when he heard some noise outside which was not uncommon and as he would usually do, he went out to tell the people making the noise to move on. (III 117)

Much of the traffic in the immediate area came from the store which was next to his house. Looking outside, Flounory had seen/saw Darrius McCrary at about 3:30 p.m. when he opened his door to tell the people (not McCrary) to quiet down and/or to move along. (III 117-126)

The police did not come to speak with Mr. Flounory until almost a year later (11/10/11). (III 27) He had no problem remembering after almost a year later that when he looked out at 3:30 p.m. he saw Darrius McCrary. He also told the police that he was really looking outside because of the other people (making noise). He had no reason to be and was not focusing on or referring to McCrary. (III 124-129)

The witness also testified that when McCrary lived in the house across the street with Ms. Dixon he parked his car in the lot behind the house. (III 130) Contrary to what the prosecutor was attempting to imply or push this witness into testifying to, there was nothing unusual about Mr. McCrary being out in front of Ms. Dixon's house at 3:30 in the afternoon on November 25, 2010, or any other day. There was nothing unusual or threatening and nothing for him to call the police about! (III 128-129)

Keshia Squalls-Southern (hereinafter Squalls) was across the street from Fredericka Dixon's house that Thanksgiving, with her children at her grandmother's house. Squalls had known Fredericka Dixon for over 5 years and they exchanged pleasantries when at her grandmother's house. (III 132-135) She had also known

JOHN D. LAZAR
ATTORNEY AND COUNSELOR

2304 E. ELEVEN MILE RD.
ROYAL OAK, MI 48067-2338

(248) 543-0390

9

McCrary for a long time and considered him a friend. (III 134) Squalls testified that she arrived at her grandmother's between about 6:30 and 7:00 p.m. when the house was pretty full. About 45 minutes after she arrived it was dark outside and people started leaving, but she did not recall the exact time. (III 136-138)

When Squalls was leaving she heard three (3) gunshots while at the front door. (III 138) Actually she indicated she ran to the door as she heard the three (3) shots. (III 138-139) At that point Squalls claims she saw McCrary (Boo) running across Fredericka's grass and yelled to see if he was ok. (III 140) When she first saw Darrius McCrary he was already on the grass running towards the parking lot; this was about 10 to 20 seconds after she heard the shots. She didn't really know whether McCrary was running or walking fast. (III 141-142) When she called his name he did not respond or say anything. (III 142-143) This witness and two (2) other women after hearing Hall hysterically screaming in the street (his mother had been shot), came across and saw Fredericka Dixon lying on the ground. They attempted to help/stop the bleeding using towels. The witness indicated they (she and the other women) called the police/911 about 30 or 40 times. She claimed it took the police about 45 minutes to arrive and there was no ambulance for about an hour to an hour and a half after that(?). (III 144 & 157-158)

Squalls testified that although it was dark she recognized McCrary walking fast or running across the grass and claimed she saw something shiny in his hand (saying she put that into her written statement). (III 142-143 & 151-152) Squalls admitted she did not write/include that in her written statement, but stood by the claim at trial McCrary

JOHN D. LAZAR
ATTORNEY AND COUNSELOR

2304 E. ELEVEN MILE RD.
ROYAL OAK, MI 48067-2338

(248) 543-0390

was holding something shiny (while admitting the only light was a street light outside in the dark). (III 147, 152-153, & 163)

Jalen Harris (17 years old) was at his grandmother's house (Dorothy Squalls) across from Dixon's with his mother, Keshia Squalls-Southern for Thanksgiving 2010. Jalen knew Ms. Dixon, as well as Darrius McCrary through his mother. (III 164-168). Jalen went to his grandmother's on Thanksgiving in the evening (after dark), but he didn't know exactly what time. While there Jalen heard about 3 or 4 gunshots, but again, he did not know the time. (III 169) When he looked out of the front living room window he claims he saw Darrius McCrary coming out of Fredericka Dixon's house and going toward a red Pontiac parked on the side of Fredericka's house. (III 170) He saw McCrary get into his car and drive off alone. (III 173)

Jasmine Dixon lived with her mother (Fredericka Dixon) at 21244 Westview in Royal Oak Township from July of 2007 until the night of her mother's shooting death, November 25, 2010. Jasmine lived at her mother's with her two (2) brothers; Darrius McCrary also lived/had lived there. (IV 6) Darrius lived in the basement with her mother from the time they moved in, about July of 2007. Her mother and Darrius had a serious, ongoing dating/boyfriend-girlfriend relationship which went back for about a year before even that (July 2007) while Dixon and her children lived elsewhere (and McCrary did not live with them). (IV 7-8)

Jasmine testified McCrary moved out in about June of 2010, to an apartment. At the time Fredericka Dixon and McCrary "broke up" and Dixon began dating Fred Wilkerson. (IV 9) Jasmine indicated that Wilkerson would come to the house and did stay overnight. After McCrary moved out she saw him outside her mother's home a

JOHN D. LAZAR
ATTORNEY AND COUNSELOR

2304 E. ELEVEN MILE RD.
ROYAL OAK, MI 48067-2338

(248) 543-0390

11

number of times sitting in his car (on his cellphone). (IV 10-11) Jasmine testified that when her mother began dating Fred Wilkerson, Darrius would be (seen) out front of the house and he would call her mother who in turn would have Jasmine look outside to see McCrary for herself sitting in his car. McCrary would continue sitting there until her mother told him (on her cell) she was calling the police and minutes later he would leave. This conduct continued through Thanksgiving 2010. (IV 13)

Jasmine testified that one morning in July or August of 2010, McCrary appeared at the house unannounced, came in, went down to the basement bedroom, came back up and exited through the front door without saying a word while she, her mother and a friend were sitting at the kitchen table. (IV 14-17) Shortly after he left, Jasmine testified that Darrius sent a text message to her mother which she saw reading, "he's on my side of the bed." [Referring to Fred Wilkerson] (IV 17)

Jasmine testified that sometime prior to November 25, 2010, she overheard a telephone conversation (on speaker) between her mother and Darrius McCrary (November 21, 2010), when she claimed McCrary said to her mother, "have that nigger out of there in twenty minutes, or I'm going to kick down the door and blow you and his brains out." (II 21-22) At that point Jasmine claims she told her mother to call the police and not take everything as a joke. (IV 21-23)

When her mother's new boyfriend, Fred Wilkerson was over, his car was often parked/left elsewhere or on some occasions Ms. Dixon would even pick him up (Jasmine claimed) to avoid problems with McCrary (heat, passion, jealousy). (IV 27)

Jasmine acknowledged writing out a statement for the police. (IV 31) During her questioning of Jasmine, the prosecutor asked her if while the McCrary lived with her

mother she (Jasmine) had ever seen him with a gun. To which she quickly answered "yes", as <u>defense/trial counsel objected</u> and prosecutor said, I can move on, but then <u>for emphasis asked if she had ever seen anyone else in the house with a gun</u>(?), to which Jasmine answered, "No". (IV 34)

Jasmine did not know or was not aware that when (after the "breakup") McCrary would come over and spend the night with her mother and leave in the morning, nor could she answer for sure if her mother would or would not stay at McCrary's apartment. She was not sure; she was not saying it did not happen. (IV 41-42)

A Stipulation was presented at trial in the presence of the jury, that if Curtis Mann, a neighbor, testified he would indicate the following.

"<u>That between late October and early November 2010 he observed Darrius McCrary entering and exiting Fredericka Dixon's home in the early morning hours between 6:00 and 7:00 a.m. or after 3:00 p.m.</u>

Further, he observed this on no more than five occasions and he does not know if Fredericka Dixon was home at the time." (V 49)

JOHN D. LAZAR
ATTORNEY AND COUNSELOR

2304 E. ELEVEN MILE RD.
ROYAL OAK, MI 48067-2338

(248) 543-0390

13

STANDARD OF REVIEW AND HARMLESS ERROR ANALYSIS

Congress mandated the standard of review in federal habeas proceedings in 1996 in the Antiterrorism and Effective Death Penalty Act (AEDPA). Congress has limited the availability of federal habeas corpus relief "with respect to any claim" the state courts adjudicated on the merits. 28 U.S.C. § 2254(d). Habeas relief may not be granted to a habeas petitioner under § 2254(d) unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

With respect to § 2254(d)(1), a state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Metrish v. Lancaster, 133 S.Ct 1781, 1786 n.2 (2013)(internal quotation marks and citation omitted). A state court decision involves an unreasonable application of clearly established Federal law pursuant to § 2254(d)(1) if "the state court decision identifies the correct governing legal principle in existence at the time," but "unreasonably applies that principle to the facts of prisoner's case." Cullen v. Pinholster, 563 U.S. 170, 182 (2011)(internal quotation marks and citation omitted). Moreover under § 2254(d)(1), the relevant Supreme Court precedent includes only the decisions in existence "as of the time the state court renders its decision." Greene v. Fisher, 132 S.Ct 38, 44 (2011)(internal quotation marks and emphasis omitted);

see also Pinholster, 563 U.S. at 182.

Under § 2254(d)(2), the "unreasonable determination" clause, "a state court factual determination application of federal law is different from an incorrect application of federal law." Renino v. Lett, 559 U.S. 766, 778 (2010)(internal quotation marks and citations omitted). This means that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Instead, the state court's "application must be objectively unreasonable." Id.

In the case at bar, the Michigan Court of Appeals decision that the application for leave to appeal was denied on the merits but found would be harmless error. (Appendix A p 3).

PRESUMPTION OF CORRECTNESS

Pursuant to 28 U.S.C. § 2254(e)(1), in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

In the case at bar, the State claim the error would be harmless is "objectively unreasonable," and not supported by the "structural error" analysis of either O'Neal v. McAninch, 513 US 432; 115 S.Ct 922; 130 L.Ed.2d 947 (1995) or Brecht v. Abrahamson, 507 US 619 (1993)("grave doubt" standard). If the Court is in "grave doubt" whether the error had substantially and injurious effect, the error cannot be deemed harmless and the court must find in favor of the defendant. McAninch, supra. "Grave doubt" in this context means that in the judges mind, the matter is so evenly balanced that the judge feels in virtual equipoise as to the harmlessness of the error. 130 L.Ed.2d at

15

951. Id.

Petitioner also states to assist the district court in complying with that "statement of reason" requirement, Petitioner reminds the Court of Summer v. Mata I, 449 US 539 (1981). Also, see, Burden v. Zant, 498 US 433, 437 (1991)(per curiam)("A habeas court may not disregard [the presumption of correctness under 28 U.S.C. § 2254(d)] unless it expressly finds that one of the enumerated exceptions to § 2254(d) is met, and it explains the reasoning in support of that conclusion."). The Michigan Court of Appeals' error was not harmless under the McAninch "structural error" test.

Petitioner McCrary further states, a federal court applying harmless error analysis to a habeas petition must apply the test announced in Brecht v. Abrahamson, 507 US 619 (1993), namely whether the constitutional error had a "substantial and injurious effect or influence" on the verdict. In O'Neal v. McAninch, 513 US 432 (1995), the Court explained that the Brecht test requires that the writ be granted when the federal court is a state of "virtual equipoise" as to the constitutional error adversely affected the verdict.

The Michigan Court of Appeals application of McAninch is objectively unreasonable because it would lead to the opposite result of either Abrahamson or McAninch binding Supreme Court president on "structural errors." (Appendix A p 3).

Petitioner McCrary states, he has shown the Court of Appeals decision was based on "an objectionable unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, or resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States to satisfy the presumption of correctness by clear and convincing evidence.

## ARGUMENT I.

THE COURT COMMITTED ERROR (WHICH IS REVERSIBLE) IN THIS CASE
BY REFUSING TO INSTRUCT THE JURY AS REQUESTED ON VOLUNTARY
MANSLAUGHTER.  SUCH A RULING AND REFUSAL TO SO INSTRUCT THE
JURY   DENIED   DARRIUS   MCCRARY   HIS   STATE   AND   FEDERAL
CONSTITUTIONAL RIGHTS TO FUNDAMENTAL DUE PROCESS, A FAIR
TRIAL, TO TRIAL BY JURY/TO A PROPERLY INSTRUCTED JURY AND
THE RIGHT TO PRESENT A DEFENSE BECAUSE IT NEGATED HIS THEORY
OF THE CASE REGARDING THE REAL, IF NOT ONLY DISPUTED ISSUE
AT TRIAL: HIS INTENT.  THE RESULT HERE WAS A MISCARRIAGE OF
JUSTICE MANDATING REVERSAL AND A NEW TRIAL.

BOTH VOLUNTARY AND INVOLNTARY MANSLAUGHTER, ARE NECESSARILY
INCLUDED OFFENSES OF THE CHARGE OF MURDER AND SHOULD BE
INSTRUCTED UPON WHERE THERE IS AT LEAST SOME EVIDENCE (WHICH
THERE CERTAINLY WAS OF VOLUNTARY MANSLAUGHTER IN THIS CASE)
FROM WHICH A RATIONAL FACT FINDER/JURY COULD CONCLUDE THAT
THE   ACCUSED/DEFENDANT   HAD   COMMITTED   (THAT   THERE   WAS
REASONABLE DOUBT AS TO THE EXISTENCE/ELEMENT OF MALICE) THE
CRIME OF MANSLAUGHTER RATHER THAN MURDER. PEOPLE V. MENDOZA,
468 MICH 527; 664 NW2d 685 (2003).

**Preservation of Issue**: The issue was clearly preserved by defense counsel's
specific and timely request for a voluntary manslaughter instruction, which the
trial court denied.

Darrius McCrary was charged in this case with both first degree pre-
meditated murder and first degree felony murder.  The trial judge refused to
give a manslaughter instruction as requested by trial/defense counsel for Mr.
McCrary. (V 38)  Trial counsel correctly took the position and argued as the
defense does here (on habeas) that the trial judge's refusal to give a
voluntary manslaughter instruction (based on the facts contained in the record)
improperly took away the defendant's ability to argue for and to have the jury
return anything but an all or nothing verdict of guilty or not-guilty on both
first-degree murder charges (pre-meditated and felony murder).  Based on the
refusal to give a voluntary manslaughter instruction Darrius McCrary's trial
counsel was left with nothing to argue as or down to a lesser included offense.
The break-in or home invasion was basically not contested or disputed.  Mr.

17

McCrary was denied his right to present a defense case or defense theory for jury consideration as it is mandated he must be allowed to do by law. As a direct result McCrary suffered a miscarriage of justice which requires a new trial. The defense was (again) in effect forced to seek an all or nothing verdict.

As instructed (without the jury receiving a voluntary manslaughter instruction), if trial counsel had argued for a second-degree murder verdict or compromise on the first-degree murder charge(s), he would have effectively admitted or been forced to admit facts necessary for and sufficient to establish common law or second-degree murder. Thus under the facts of this case (with the door related damage from or forced entry not in dispute) had trial counsel convinced the jury McCrary did not commit first-degree premeditated murder, but only common law murder (second degree murder) he would still have been arguing his client's guilt to non-paroleable first degree felony murder.

In this case manslaughter was a proper, viable, sufficient fact based (supported) option for the jury to consider. The jury not the presiding judge would have addressed and decided the facts based upon all proper legal options. Nonetheless the request for a voluntary manslaughter instruction was refused. This well respected, yet not infallible and human trial judge made a very serious mistake/error, abused her discretion (as a matter of law) based on the facts by not giving or allowing a requested voluntary manslaughter instruction to be given/considered and thus she directly caused a miscarriage of justice.

Michigan has a statute covering the crime of manslaughter, MCL 750.321, which provides a penalty for commission of the offense of manslaughter, but no definition of what is required by way of specific acts or elements. Both voluntary and involuntary manslaughter involve the unlawful killing of another

18

person without legal justification or excuse and <u>both types of manslaughter are</u> <u>distinguished from the higher crime of murder or different degrees of murder by</u> <u>the absence of malice (the element of malice)</u>. <u>Wellar</u> v. <u>People</u>, 30 Mich 13, 19 (1874); <u>People</u> v. <u>Younger</u>, 380 Mich 678, 681-682; 158 NW2d 493 (1968); <u>People</u> v. <u>Onesto</u>, 203 Mich 490, 496; 170 NW 338 (1918).

Simply put, "manslaughter is murder without malice." <u>People</u> v. <u>Mendoza</u>, 468 Mich 527; 664 NW2d 685 (2003) (See historical cites in <u>Mendoza</u> omitted here).   The defense here respectfully submits the Trial Judge was wrong; she failed to recognize that there was more than enough evidence in the record, many, many factors and/or pieces of evidence for the jury herein to consider or have considered whether or not there was sufficient mitigation to permit the finding of the lesser crime of manslaughter rather than murder beyond a reasonable doubt.  The jury should have been allowed to make that determination here, not the trial judge.

It must always be kept in mind that what constitutes adequate and reasonable provocation mitigating murder to manslaughter is not for the court to decide, but is a question of fact for the jury. <u>People</u> v. <u>Holmes</u>, 111 Mich 364; 69 NW 501 (1896).  This long-standing principle/rule of Michigan criminal law appears to still control the murder/manslaughter question (distinction). Examining the distinction should have been left to the jury, not usurped by the trial court as it was in this case. See <u>People</u> v. <u>Pouncey</u>, 437 Mich 382, 388; 471 NW2d 346 (1991); <u>People</u> v. <u>Mendoza</u>, supra.

The opportunity to be heard is the fundamental requisite of due process of law. <u>Mullane</u> v. <u>Central Hanover Trust Co.</u>, 339 US 306; 70 S.Ct 652; 94 L.Ed 865 (1950); <u>Boddie</u> v. <u>Connecticut</u>, 401 US 371, 377-379; 91 S.Ct 780; 28 L.Ed.2d 113 (1971); <u>Mudge</u> v. <u>Macomb County</u>, 458 Mich 87, 101-102 (1998); US Const. Am XIV.

Both voluntary manslaughter and murder require there be a death, which

19

death was caused by the person charged who had either an intent to kill, an intent to commit great bodily harm or an intent to create a very high risk of great bodily harm with the knowledge that death or great bodily harm was a probable result of his or her act. The element or factor if you will distinguishing the crime of murder from that of manslaughter, **malice**, is negated by the presence of provocation and/or if you will an act provoked by/in "the heat of passion". See Mendoza, supra; MCL 750.316 and MCL 750.317.

Mr. McCrary, like all criminal defendants, has/had a constitutional right to a properly instructed jury. Estelle v. McGuire, 502 US 62, 72; 112 S.Ct 475; 116 L.Ed.2d 385 (1991). "[W]hen a defendant requests an instruction on a lessor included offense, it must be given if supported by a rational view of the evidence." People v. Mendoza, supra. at 468 Mich 541. Voluntary manslaughter is a necessarily included lesser offense of murder because only differing levels of mens rea, namely the presence of malice, separate the two (2) offenses. Mendoza, supra. at 468 Mich 540.

In People v. Mendoza, supra. at 468 Mich 527, 540-541 the Michigan Supreme Court ruled that manslaughter is a necessarily included lesser offense to second degree murder "whose elements are completely subsumed in the greater offense...Because voluntary and involuntary manslaughter are necessarily included offenses, they are also 'inferior' offenses within the scope of MCL 768.32. Consequently, when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." Id. See People v. Cornell, 466 Mich 335; 646 NW2d 127 (2002).

The mistake or error mandating reversal in the case sub judice is that a jury instruction on voluntary manslaughter must be given if/where there is even only a modicum or slight amount of evidence of provocation. People v. Moore,

189 Mich App 315; 472 NW2d 1, 3 (1991). Certainly this record contains at least that amount or level of evidence (or more) to have mandated the giving of a voluntary manslaughter instruction.

There is no question that there was still "something" going on ("relationship wise") between these two (2) people, Darrius McCrary and the now deceased, Fredericka Dixon. There is even unchallenged evidence in the record by way of a stipulation that (between) late October into November 2010, a neighbor, Curtis Mann observed Darrius McCrary coming and going into and out of Fredericka Dixon's home in the evening and morning on up to five (5) different occasions. (V 49)  These witnessed/observed overnight get-togethers took place after it is said the two (2) had separated or "broke up" for about three (3) months.  Nonetheless it appears that the two (2), Dixon and on McCrary were constantly on the cellphone (see the 50 or more back and forth calls, among other things) even during the period Ms. Dixon had a new person/man she was seeing (Fred Wilkerson). Fredericka would also still borrow/use Darrius' car. On one occasion while Dixon was seeing the other man McCrary walked in and out of her house (causing no trouble, physical disruption, harm and without making a threat to anyone) and thereafter, noted in a text message to Ms. Dixon that (referring to the new man, Fred Wilkerson), "he's on my side of the bed." (IV 14-17)

The jury could have believed McCrary was so provoked, so overtaken by the heat of passion he did not have or act with malice. We submit that under the case law the ongoing relationship and interaction between the accused and the deceased in this case gave rise to a provocation that jurors could rationally find reasonably likely to cause or have caused someone (McCrary) to act in a heat of passion (hot blood brought about by provocation). The evidence which appears throughout this case record is/was plainly and necessarily sufficient

to (have been) considered by the jury (not the judge) and supports (would have supported) the necessarily lesser offense of voluntary manslaughter a result/verdict.

"Voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control." People v. Fortson, 202 Mich App 13; 507 NW2d 763 (1993). There must be evidence (and was here) that there was something that could cause a reasonable person to lose control. People v. Pouncey, 437 Mich 382; 471 NW2d 346 (1991). The defense was precluded from having this defense considered because the McCrary trial judge refused to instruct on it. The jury might well have "rationally" opted for a manslaughter verdict here, if they had known that provocation, by passion or hot blood made or could make a difference in their decision.

Trial counsel for Mr. McCrary requested the voluntary manslaughter instruction to be given as a lesser included offense (based on the evidence at trial) and that was denied. A voluntary manslaughter instruction should have been given as and because it was a necessarily included lesser offense here on the basis of People v. Cornell, 466 Mich 335; 646 NW2d 127 (2002).

A trial judge's refusal to instruct the jury on an appropriate necessarily included lesser offense "foreclose[s] the jury's option to convict the defendant in accordance with his own testimony, evidence and theory." People v. Richardson, 409 Mich 126; 141; 293 NW2d 332 (1980). A defendant's "right to a conviction commensurate with the evidence produced at trial is more than a mere formality." People v. Bairefoot, 117 Mich App 225, 230-31; 323 NW2d 302 (1982). "If the proofs could support a verdict of guilty on [a necessarily included lesser offense], the defendant is entitled to the instruction, no matter how

22

compelling the inferences supporting a contrary verdict." People v. Rochowiak,

416 Mich 235, 243; 330 NW2d 669 (1983)(emphasis added)

The "use Note" to CJI2d 16.9-Voluntary Manslaughter as a lesser included

Offense of murder reads:

> "This instruction should be given after murder instructions, as part of
> the main charge to the jury. If jurors express confusion or return to
> request reinstruction on voluntary manslaughter, the trial court should
> combine CJI2d 16.9 (which explains the difference between murder and
> voluntary manslaughter) with CJI2d 18.8 (which explains the essential
> elements of voluntary manslaughter)."

The Standard Instruction, CJI2d 16.9 to be given in a murder case such as

this on the lesser offense reads:

## "Voluntary Manslaughter as a Lesser Included Offense of Murder

(1) The crime of murder may be reduced to voluntary manslaughter if the
defendant acted out of passion or anger brought about by adequate
cause and before the defendant had a reasonable time to calm down.
For manslaughter, the following two things must be present.

(2) First, when the defendant acted, [his/her] thinking must be disturbed
by emotional excitement to the point that a reasonable person might
have acted on impulse, without thinking twice, from passion instead of
judgment. This emotional excitement must have been the result of
something that would cause a reasonable person to act rashly or on
impulse. The law does not say what things are enough to do this.
That is for you to decide.

(3) Second, the killing itself must result from this emotional excitement.
The defendant must have acted before a reasonable time had passed to
calm down and return to reason. The law does not say how much time is
needed. This is for you to decide. The test is whether a reasonable
time passed under the circumstances of this case."

Even in cases when a defendant admits to criminal activity or conduct, but

denies the requisite intent (or proceeds with that as his/her defense theory),

the trial judge must instruct on an offense that is consistent with the theory

of his/her case if there is some (a modicum of or slight) evidence introduced

which rationally supports the instruction. People v. Moore, supra. For

example, in Richardson, even though the defendant admitted that he committed a

23

crime, but denied the intent, the trial judge only instructed the jury on offenses that involved the intent to inflict great bodily harm or cause death, and denied his request for instructions that involved careless, reckless or criminally negligent conduct that results in injury or death. Richardson, supra. at 409 Mich 140. The court on appeal reversed, and held,

"[T]he effect of the trial judge's refusal to instruct on the lesser offense of involuntary manslaughter [here voluntary manslaughter] and reckless use of a firearm was to foreclose the jury's option to convict the defendant in accordance with evidence." Id. at 141.

Therefore, when the trial court improperly denied Mr. McCrary's request (as did the trial court in Richardson), it severely and irreparably prejudiced Defendant by denying him his constitutional rights to a properly instructed jury and to present a defense. US Const Ams VI and XIV; Estelle v. McGuire, supra. at 502 US 72; Crane v. Kentucky, 476 US 683, 690; 106 S.Ct 2142, 2146; 90 L.Ed.2d 636 (1986)  Here, the defense/defense theory was that Mr. McCrary did not have the requisite mental state for murder. Since there was certainly some dispute on this point, defense counsel requested a jury instruction on manslaughter, a necessarily included lesser offense that is distinguished from murder because malice is negated by provocation (heat of passion). Mendoza, supra. at 468 Mich 536.

In addition to the voluntary manslaughter instruction going to the only disputed issue (state of mind/malice), it was well (and rationally) supported by the evidence. In order to show voluntary manslaughter, a defendant has to point to evidence showing that he/she "killed in the heat of passion, the passion was caused by adequate provocation, and there was no lapse of time during which a reasonable person could control his passions." Id. at 535.  In the instant case there was such rational evidence; there were reasons (evidence in the record) for McCrary being provoked (made "crazy" jealous and/or acting

24

in the heat of passion without cooling off). [See for example McCrary's text message Jasmine claimed/claims to have seen to Ms. Dixon, her mother, reading "he's on my side of the bed." (IV 17)] That factor, question and others were for the fact finder/jury to consider and decide, not the Trial Judge!

There was clear evidence giving rise of the kind of provocation, heat, passion or heat of passion at the time that would justify a manslaughter instruction and verdict. This trial judge's ruling/reasoning ignored the existence of this rational evidence. The mitigating evidence, indeed connecting pieces of such evidence can be found throughout the case/trial record and the jury could well have determined the evidence mitigated the murder charge(s) to manslaughter (there being a lack of proof beyond a reasonable doubt of malice). Mendoza, supra. The jury did not get that chance.

While the jury would have been free to not believe or agree with the defense/Mr. McCrary's view of the evidence, it was the jury that should have made (been allowed to make) that decision, not the trial judge. From the evidence presented at trial, a reasonable jury could have found that Mr. McCrary's reaction/action came from "passion rather than reason." People v. Pouncey, 437 Mich 382, 389; 471 NW2d 346 (1991). This would also have been a "rational view of the evidence" and justified a voluntary manslaughter instruction and verdict. Mendoza, supra. at 468 Mich 541.

The trial judge abused her discretion in refusing to give the manslaughter instruction, which would have given the jury an opportunity to decide if there was sufficient provocation (heat of passion) for a manslaughter verdict. See People v. White, 15 Mich App 527, 530; 166 NW2d 639 (1969)(saying the sufficiency of provocation is a jury determination based on the facts and circumstances of each case).

The refusal to instruct on a lesser offense, where supported by the

25

evidence, is reversible constitutional error. Keeble v. United States, 412 US 205; 93 S.Ct 1993; 36 L.Ed.2d 844 (1973); Ferrazza v. Mintzes, 735 F.2d 967 (6th Cir. 1985); Vujosevic v. Rafferty, 844 F.2d 1023 (3rd Cir. 1988). The test is whether they jury could rationally find guilt on the lesser offense. United States v. Crutchfield, 547 F.2d 496, 499 (9th Cir. 1977). At the same time on the basis of the evidence the jury is/would be (and would have been here) free to reject the defendant's claim that he acted in the heat of passion and appellate courts will not second guess the jury's determination. People v. Wolfe, 440 Mich 508, 514-515; 489 NW2d 748 (1992); People v. Roper, 286 Mich App 77; 777 NW2d 483, 491 (2009).

A criminal defendant has a constitutional right to jury instructions on a defense supported by any evidence. Cheek v. United States, 498 US 192; 111 S.Ct 604; 112 L.Ed.2d 617 (1991); Taylor v. Kentucky, 436 US 478, 485; 98 S.Ct 1930; 56 L.Ed.2d 468 (1978); Glenn v. Dallman, 686 F.2d 418 (6th Cir. 1982); Strauss v. United States, 376 F.2d 416 (5th Cir. 1967); United States v. Hicks, 748 F.2d 854 (4th Cir. 1984); Morissette v. United States, 342 US 246; 72 S.Ct 240; 96 L.Ed 288 (1952). "A defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Matthews v. United States, 485 US 58; 108 S.Ct 883; 99 L.Ed.2d 54 (1988).

The error (in refusing to give manslaughter instructions here) was not harmless because it "undermine[d] the reliability of the verdict," People v. Lukity, 460 Mich 484, 495; 596 NW2d 607 (1999). The error also was not and could not have been harmless beyond a reasonable doubt, the standard the government must meet/satisfy to counter or overcome (this) preserved constitutional error. Chapman v. California, 386 US 18, 24; 87 S.Ct 824; 17 L.Ed.wd 705 (1967). Certainly, the error here was properly preserved by a

direct and timely request for the voluntary manslaughter instruction. In his closing argument, defense counsel accordingly/properly argued that Mr. McCrary did not have the requisite intent/state of mind for murder; there was no malice. Unfortunately, the jury here did not have a "no malice" verdict or option to agree upon or reject and the jurors were left with only choices or options of first degree murder or not guilty.

The Supreme Court of Michigan has found erroneous jury instructions harmless in a case where the jury was allowed to consider and reject a true intermediate offense. People v. Beach, 429 Mich 450, 490; 418 NW2d 861 (1988). The trial judge's refusal to give the jury instruction on voluntary manslaughter here was improperly prejudicial/harmful (not harmless) because it denied the jury the opportunity to (consider and) convict Darrius McCrary of a lesser offense (even consider the same as in Beach) when that option was clearly supported by evidence presented in the case.

Further, there is a certain category or group of errors the United States Supreme Court has characterized as being "structural defects in the constitution of the trial mechanism" which affect "the framework within which the trial proceeds" and such errors undermine the trial's basic reliability. Arizona v. Fulminante, 499 US 279, 310; 111 S.Ct 1246; 113 L.Ed.2d 302 (1991). Such errors, including the denial of Mr. McCrary's right to present his defense, his theory of the case to the jury and to have the jurors consider it are not harmless and are never harmless. The error or defect here is "structural" and mandates reversal without a harmless error analysis.

Our Federal Sixth Circuit in United States v. Monger, 185 F.3d 574, 578 (6th Cir. 1999), characterized the failure to instruct on a lesser included offense as "intrinsically harmful structural error" requiring reversal. Even older Michigan cases suggest the failure to instruct on lesser offenses

27

(justified by the evidence) is automatically reversible error. See e.g., People v. Van Smith, 388 Mich 457, 461-462; 203 NW2d 94 (1972).

Mr. McCrary's defense theory did not deny the assault with a weapon, but went to the mental state (intent) of the actor.   The jury was denied the opportunity to even evaluate Defendant/Appellant's theory of the case and he was denied his right to exercise that mechanism of the jury trial process to have them weigh and evaluate same.

Mr. McCrary is entitled at least to a new trial where the jury is instructed on both murder and voluntary manslaughter.

## ARGUMENT II.

THE TRIAL PROSECUTOR'S DIRECT COMMENTS ON DEFENDANT MCCRAY'S FAILURE TO PRESENT A DEFENSE AND/OR DEFENSE EVIDENCE TO COUNTER THE GOVERNMENT'S PROOFS, PARTICULARLY AS TO INTENT MANDATES REVERSAL OF HIS CONVICTIONS.   SUCH COMMENTS ARE PROHIBITED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION, MICHIGAN'S CONSTITUTION CONST. 1963, ART 1 § 17 AND STATUTE (MCL 600.2159).

THE PROSECUTOR'S COMMENTS AS TO THE DEFENDANT FAILURE TO COUNTER THE GOVERNMENT'S CASE/PROOFS VIOLATED DARRIUS MCCRARY'S FIFTH/FOURTEENTH AMENDMENT PROTECTIONS UNDER THE UNITED STATES CONSTITUTION, AS THE STATEMENTS/COMMENTS DIRECTED THE JURY'S ATTENTION TO MR. MCCRARY'S DECISION TO REMAIN SILENT, NOT TO TAKE THE WITNESS STAND HIMSELF AND NOT TO TESTIFY IN HIS OWN DEFENSE (AS A WITNESS AGAINST HIMSELF) AND CERTAINLY SHIFTED THE BURDEN OF PROOF TO DEFENDANT, VIOLATING HIS RIGHT TO SIMPLY LEAVE THE ENTIRE BURDEN ON THE GOVERNMENT (A FUNDAMENTAL RIGHT) TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT WITHOUT DEFENDANT BEING CALLED UPON TO DEFEND/RESPOND IN ANY WAY.

**Preservation of issue:** This issue was not preserved, but in any event, the court should afford full review in any event because the error "undermine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice" and/or "manifest injustice." United States v. Young, 470 US 1, 13 (1985); People v. Van Dorsten, 441 Mich 540, 545; 494 NW2d 737 (1993); See People v. Bettistea, 173 Mich App 106; 434 NW2d 138 (1988).

Although there was no objection, in the closing moments of the government's rebuttal argument at a point when (the prosecutor knew) defense counsel would not have an opportunity to respond, the government's prosecutor stated the following:

"There is nothing that has been shown to you through defense witnesses or in any regard that disproves any of the elements of the charges. Nothing has been shown to you that negates his intent." (V, 92)

In essence, trial prosecutor pointed out to the jury that the defendant had not presented a defense/defense case, particularly that the Defendant/defense had presented no evidence of any kind to disprove the government's charges or the elements making up those charges.   They, the

29

defense, and Mr. McCrary the prosecutor asserted had done/presented nothing to show a lack of intent to kill or negate or mitigate intent or one of the other states of mind that would establish first-degree premeditated and/or common law (second-degree) murder. (V, 92)

Darrius McCrary, as the accused/criminal defendant in this case did not testify, nor did he present or have presented on his behalf direct defense evidence or a defense case going to that decisive element/issue (intent). The trial prosecutor here made very direct reference to that in her rebuttal argument without even the pretext of her remarks/comments being for or intending them to do anything, but to remind/reminding the jury in this most serious of cases that Defendant had not testified and/or otherwise presented evidence as part of a defense case to counter the specific prosecution evidence (or intent to commit the crimes/charges).

A criminal defendant such as Mr. McCrary is protected from such improperly prejudicial constitutionally prohibited prosecutorial conduct by both the Constitutions of the United States, its Amendments and the Constitution of the State of Michigan, as well as statute, MCL 600.2159.  That statute (MCL 600.2159) reads in applicable part:

""A defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

Just because a prosecutor makes out a case, even a strong one, does not in and of itself, allow him/her to shift the burden of proof to the defendant. The burden of proof is always the prosecutor's (burden) to prove a defendant's guilt, including each and every element of the offense charged beyond a reasonable doubt. In re Winship, 397 US 358; 90 S.Ct 1068; 25 L.Ed.2d 308 (1970).

30

A prosecutor may not even imply (much less demand as here) in closing argument (rebuttal) that a criminal defendant (must) prove or counter something or present a reasonable explanation for incriminating/damaging evidence because such an argument or suggestion to the jury tends to shift the burden of proof (which is always on the government alone). People v. Green, 131 Mich App 232, 237; 345 NW2d 676 (1983). Here it did not just "tend" to do so, rather the trial prosecutor directly called Mr. McCrary out on exercising his Fifth Amendment (as well as state constitutional and statutory) right(s).

In this case, the trial prosecutor's rebuttal comments declared that Mr. McCrary was responsible for presenting evidence, required to say or produce something (evidence) to prove his innocence, counter the prosecutor's evidence, to demonstrate he was not guilty-did not do it.

This prosecutor's improper, unconstitutional comment/conduct may well have encouraged or caused some jurors or even just one juror to forgo his/her personal belief in the existence of reasonable doubt an element or elements and/or Defendant's guilt.

Our Courts have held that if or to the extent this matter or issues are subject to "plain error" review, the error(s) is reversible as/if outcome determinative and/or highly prejudicial and as seriously affecting the fairness, integrity and/or public reputation of the judicial proceedings. People v. Carines, 460 Mich 750, 763-764; 597 NW2d 130 (1999). The error here is/was not harmless even under Carines. See United States v. Olano, 503 US 725 (1993). The plain error standard requires the defense to establish: 1) there was an error; 2) the error was plain, meaning clear or obvious; 3) the error caused prejudice/affected substantial rights/it likely affected the outcome of the trial; 4) and the error resulted in the conviction of an innocent person or "seriously" "affect[ed] the fairness, integrity or public reputation of

31

judicial proceedings independent of the defendant's innocence." <u>Carines</u>, supra,
at 460 Mich 763-764.  Here Defendant/Appellant has met that standard.

### ARGUMENT III.

DEFENDANT'S RIGHTS AGAINST DOUBLE JEOPARDY UNDER BOTH OUR STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BECAUSE THE JUDGMENT OF SENTENCE CONTAINS TWO (2) COUNTS OF MURDER (FIRST DEGREE PREMEDITATED AND FIRST DEGREE FELONY MURDER) AND TWO (2) COMPANION COUNTS OF FELONY FIREARM IN A CASE INVOLVING ONLY ONE HOMICIDE VICTIM.  BOTH THE FEDERAL AND STATE CONSTITUTIONS PROHIBIT MULTIPLE CONVICTIONS AND PUNISHMENTS FOR THE SAME OFFENSE. AMS V; CONST. 1963, ART 1 § 15.

**Preservation of Issue**:  Defendant/Appellant failed to object below; therefore review here is for unreserved constitutional claims of double jeopardy violations for plain error. People v. Williams, 265 Mich App 68; 692 NW2d 722 (2005).

In this case the jury returned convictions on two (2) counts of first degree murder: first degree premeditated murder and first degree felony murder, as well as two (2) felony firearm convictions. (Judgment of Sentence & Sent. Trans). The sentence transcript and original Judgment of Sentence reflect the two (2) separate convictions and sentences for first degree murder and two (2) separate concurrent sentences of life without parole. (Judgment of Sentence and Sentence Trans.) An Amended Judgment of Sentence reflects both again with two (2) felony firearm counts, but not as to the two (2) murder counts (listed) which reads: "2 Theories". Yet the Amended Judgment still reflects the two (2) murder convictions together with two (2) felony firearm convictions (not one) with sentences and time credit on both the felony firearm counts (related to the murder counts).

This Court has previously recognized that, "multiple murder convictions arising out of the death of a single victim violate double jeopardy." People v. Clark, 243 Mich App 449; 622 NW2d 344 (2000). All else aside, if the Court does not otherwise grant relief (a new trial) here, Defendant/Appellant would assume and/or suggest that since it is undisputed there is only one victim and

33

one murder conviction and sentence, there can be only one felony firearm conviction and sentence. The McCrary jury convicted Defendant/Appellant on two (2) counts of first degree murder: premeditated murder and felony murder (and he was sentenced on both counts) in violation of Defendant/Appellant's constitutional protections as to double jeopardy. If there is just one murder conviction/sentence there can be but one felony firearm conviction/sentence coupled to it. MCL 750.227b. His Judgment of Sentence improperly lists two (2) distinct counts of first degree murder and two (2) felony firearm convictions/sentences. The original Judgment of Sentence itself reflects and imposes a life sentence, for each of the two (2) counts of first degree murder with those life terms without parole to be served concurrently. Again, it appears to be "horn book" law here and this Honorable Court, our State appellate courts will uphold only a single murder conviction based on two (2) alternative murder theories. People v. Joezelle Williams, 265 Mich App 68, 72; 692 NW2d 722 (2005).

A trial court may not, as this Court has done, impose and have its Judgment of Sentence reflect two (2) counts of murder and two (2) sentences. Id., People v. Bigelow, 229 Mich App 218, 220-221; 581 NW2d 744 (1988). Defendant/Appellant McCrary is entitled to a Judgment of Sentence accurately reflecting (based on double jeopardy protections) only one count of first-degree murder supported by two (2) theories (premeditated and felony murder) and one single sentence, as well as one felony firearm conviction and sentence as to the single (one) murder. Id., People v. Morton, 423 Mich 650; 377 NW2d 798 (1985).

On this basis, the Court here is at the very least required to remand to the trial court for the correction of the Amended Judgment of Sentence to reflect one count of first-degree murder based on two (2) theories

34

(premeditated   and   felony   murder)   and   just   one   felony   firearm conviction/sentence as to that one murder.   Again, there can and must be just one sentence for first-degree murder and related felony firearm (not two).

### ARGUMENT IV.

DEFENDANT IS ENTITLED TO RELIEF FROM JUDGMENT OF CONVICTIONS AND SENTENCE BECAUSE HE WAS DENIED DUE PROCESS AND HIS SENTENCE AND CONVICTIONS IS THEREFORE INVALID WHERE THE TRIER OF FACT WAS EXCITED BY PASSION AND PREJUDICE CALCULATED BY THE PROSECUTION'S PRESENTATION OF THE COLORED PHOTOS.

**Preservation of Issue:** MRE 103(a) provides: Error may not be predicated upon a ruling which admits or excludes evidence unless a Substantial right of the party is affected, and (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context: or (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party claim of error for appeal. See People v. Bettistea, 173 Mich App 106; 434 NW2d 138 (1988).

Generally, all relevant evidence is admissible at trial. People v. Aldrich, 246 Mich App 101; 631 NW2d 67 (2001). In determining whether evidence is admissible under relevancy rule, court must determine materiality of the evidence and its probative force. People v. Mills, 450 Mich 61; 537 NW2d 909 (1995). Evidence is relevant if it has any tendency to make the existence of fact that is of consequence to the determination of the action more or less probable than it would be without the evidence, all elements of a criminal offense are "in issue," and thus material, when a defendant enters a plea of not guilty. People v. Aguwa, 245 Mich App 1; 626 NW2d 176 (2001); People v. Vandevliet, 444 Mich 52; 508 NW2d 114 (1993). See also Matthews v. U.S., 485 U.S. 58; 108 S.Ct 883; 99 L.Ed.2d 54 (1988); MCR 6.301(A). Even relevant evidence may be excluded if its probative value is substantially out weighed by the danger of unfair prejudice. People v. Houston, 261 Mich App 463, 467 (2004); MRE 403. "Unfair prejudice" does not mean "damaging." Bradbury v. Ford Motor Co., 123 Mich App 179, 185; 333 NW2d 214 (1983). All evidence offered by parties is "prejudiced" to some extent, but the fear of prejudice does not

generally render the evidence inadmissible. Mills, supra., at 537 NW2d 910. Admission of gruesome photographs solely to arouse the sympathies or prejudice of the jury may be error, requiring reversal. People v. Ho, 231 Mich App 178, 188; 585 NW2d 357, 362-363 (1998); People v. Eddington, 387 Mich 551; 198 NW2d 297 (1972).

MRE 403 provides that although relevant, evidence may be excluded if its probative value is substantially out weighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. As applied to photographs, a court is to determine whether...[the] photographs "substantially necessary or instructive to show material facts or conditions, or merely calculated to excite passion and prejudice." People v. Falkner, 389 Mich 682, 685 (1973). See Eddington, supra.

Even if **relevant**, evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issue, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. People v. Sabin (After Remand), 463 Mich 43, 58 (2000). This court has noted in the past that, by definition, all relevant evidence introduced against a defendant "is some what prejudicial to a defendant." People v. Magyar, 250 Mich App 408, 416 (2002). Therefore, the question is not simply whether the evidence prejudiced defendant, but rather, whether the evidence is unfairly prejudicial. People v. Ackerman, 257 Mich App 434, 442 (2003).

In this case, its clear and obvious the colored photographs is calculated to excite the passion and prejudice on the basis of the testimony that was elicited from Lt. Mark Gardner where Doctor Ljubisa J. Dragovic, medical examiner corroborated the cause of death and manner of Ms. Fredericka Dixon's

37

death by his medical report of his findings. (TT Vol. IV p 56-57, 105-108, 129-130). See also (TT Vol. IV p 56-57, People's number 17).

Defense counsel addressed the court in his objection of the photographs being more prejudicial in the above regard, meant to inflame the jury. (TT Vol. 1 p 5, 6).

**THE COURT HAS AUTHORITY TO SET ASIDE CONVICTION AND SENTENCE AND GRANT RELIEF**

If the court determines the conviction and sentence is invalid, the court has authority to set aside convictions where the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. As applied to photographs "substantially necessary or instructive to show material facts or conditions, or merely calculative to show material facts or conditions, or merely calculated to excite passion and prejudice." Falkner, supra; Eddington, supra; MCR 6.414(B); MCR 6.502(A), MCR 6.508(D)(3)(a)(b)(i)(iii), see Wainwright v. Sykes, 433 US 72; 97 S.Ct 2497; 53 L.Ed.2d 594 (1977)(habeas corpus action by state prisoner); United States v. Frady, 456 US 152; 102 S.Ct 1584; 71 L.Ed.2d 816 (1982)(under 28 U.S.C. § 2255).

The staff comment under MCR 6.501 indicates that subchapter 6.500 is the exclusive procedure for post appeal proceedings for a criminal defendant who has had an appeal by right or by leave who has unsuccessfully sought leave to appeal, or who is unable to file an application for leave to appeal because the time limits for doing so have expired.

In this case, Defendant-Appellant has already filed an appeal of right. (see People v. Edwards, 465 Mich 941; 639 NW2d 257 (2002)). He is therefore not entitled to an appeal of right or by leave. See MCR 6.501. Since "the defendant is no longer entitled to appeal by right or by leave, the defendant

38

may seek relief pursuant to the procedure set forth in subchapter 6.500." See MCR 6.429(B)(4).

Defendant seeking postconviction relief under MCR 6.500 must file a motion for relief from Judgment setting forth all of the grounds for relief sought. MCR 6.502(A).

Pursuant to MCR 6.508(D), the defendant has the burden of establishing entitlement to the relief requested in his motion. The court may not grant a motion for relief from Judgment unless the defendant "demonstrates (a) good cause for failure to raise such grounds on appeal," and (b) actual prejudice from the alleged irregularities that support the claim for relief. See MCR 6.508(D)(3)(a)-(b).

**Defendant has Demonstrated Good Cause And Actual Prejudice**

### (a) Good Cause

Although subchapter MCR 6.500 has been in effect for nearly three decades. Our Michigan Appellate Courts have never given the term "good cause" a precise meaning. See People v. Reed, 449 Mich 375; 535 NW2d 495 (1995). However, the commentary to MCR 6.508 (which was relied on in Reed, supra, at 501) states that the "cause and prejudice" standard is based on the United States v. Frady, 456 US 152; 102 S.Ct 1584; 71 L.Ed.2d 816 (1982) and Wainwright v. Sykes, 433 US 72; 97 S.Ct 2497; 53 L.Ed.2d 594 (1977). Under those decisions, a federal court will not review a prisoner's claim that the State court has found procedurally defaulted unless the prisoner can demonstrate cause and prejudice. Wainwright, 433 US at 87.

In Reed, supra, the Michigan Supreme Court agreed that "cause" can be established by proving ineffective assistance of appellate counsel pursuant to the standards set forth in Strickland v. Washington, 466 US 668; 104 S.Ct 2052; 80 L.Ed.2d 674 (1984), or by showing that some external factor prevented

39

counsel from previously raising the issue. See Reed, at 535 NW2d 500; MCR
6.002; Murray v. Carrier, 477 US 478; 106 S.Ct 2639 at 2644, 2645; 91 L.Ed.2d
397 (1986) and Engle v. Issac, 456 US 107; 102 S.Ct 1558 at 1573; 71 L.Ed.2d
783 (1982).

In addition, the United States Supreme Court recently observed that
"cause" requirement in relations to the above may be "waived" where there is a
fundamental miscarriage of justice. See United States v. Delo, 115 S.Ct 851,
856; 130 L.Ed.2d 808 (1995); People v. Reed, supra.

In the present case, Defendant contends his convictions and sentence is
invalid and therefore entitled to relief.  Defendant maintains that "good
cause" for his failure to raise this issue in his appeal is satisfied where: 1)
external factors prevented him from raising the issue on appeal: 2) ineffective
assistance of appellate counsel prevented him from presenting the issue on
appeal; and, 3) even if Defendant cannot demonstrate good cause, the court
should address the merit of the issue because he suffered and continues to
suffer from a miscarriage of justice.

## External Factors:

External factors include showing that the factual or legal basis for a
claim were not available to counsel, or that some interference by officials
made compliance impracticable. See Reed v. Ross, 468 US 1; 104 S.Ct 2901, 2901;
82 L.Ed.2d 1 (1984); Carrier, 106 S.Ct at 2639.

In Reed v. Ross, the prisoner's failure to appeal a Jury instruction was
excused because at the time, there was no question as to the instruction's
validity.  It was not questioned until years later and was eventually struck
down by the United States Supreme Court in Mullaney v. Wilbur, 421 US 684; 95
S.Ct 1881; 44 L.Ed.2d 508 (1975).  The court held that the absolute lack of
legal basis for the claim at the time the prior appeal was filed constituted

good cause for failing to raise the issue in the prior appeal.

In the present case, the Defendant's convictions was based largely on the needless presentation of cumulative evidence, that evidence that was calculated solely to arouse the sympathies or prejudices of the jury by the presentation and admission of gruesome photographs.

The record reflects the high potential danger of the probative value substantially outweighed the defendant's rights to a fair trial pursuant to the United States Constitutions, Fifth and Fourteenth Amendments.

During Jury Voir Dire pursuant to MCR 6.412 the record reflect several jurors have a problem with viewing the photographs. Two unidentified male and female jurors stated they think they may have a problem with viewing the photos.

And juror Johnson, the identified juror, stated: **"I don't know to be honest with you.  I can't say."  "No.  Because I mean I'm an engineer, no I'm fact driven so I don't know what the picture will do.  That's an emotional thing, so I don't know what the picture would actually mean to m e."** (TT Vol. I. p 50-51).  The prosecutor further elicited from juror Johnson if she showed them those pictures and telling them you're going to see some pictures, are they going to hold that against her?  Juror Johnson answered no. (TT Vol. I p. 51).  (The question esoterically suggest who is juror Johnson going to hold the photo against if not the prosecutor?).

Juror Messing was afraid they'll be sick to their stomach. And juror Deni shared that same sentiment. (TT Vol. I p. 52, 53).

So its clear these particular photographs carry a strong prejudicial impact other than showing the cause and manner of death. They were calculated to arouse passion and sympathies that would render unfair prejudice for an unjust determination in the finding of facts in the jury assessment in the jury

room by such magnifying impression.

Since appellate counsel had the factual information necessary to raise the prejudicial photographs issue when he filed the appeal, he cannot possibly say he did not see that the trial counsel did not object to their admission on the basis of their materiality and probative force. Mills, supra 537 NW 909.

Wainwright v. Sykes, held that a federal habeas prisoner who has failed to comply with a State's contemporaneous-objection rule at trial must show cause for the procedural default and prejudice attributable there to in order to obtain review of his defaulted constitutional claim. 433 US at 87; 97 S.Ct at 2506. See FRE 103(a).

Note: MRE 103 is identical to our federal brethern FRE 103.

Michigan-Rule 103 **Original Proposal**

**Proposed Text**

**[The proposed rule was adopted without change]**

Committe Note

MRE 103 does not change prior Michigan law.

Impact on Prior Michigan Law.

Subdivision (a). The statement of MRE 103(a) that error may not be predicated upon evidence ruling unless a substantial right of a party is affected is consistent with GCR 1963, 529.1 which states that evidence error will not result in reversal "unless refusal to take such action appears to the court inconsistent with substantial justice." See also M.C.L.A. § 769.26 which states a similar rule for criminal cases. See Taylor v. Lowe, 372 Mich 282; 126 NW2d 104 (1964); Case v. Klute, 283 Mich 581; 278 NW 721 (1938).

Because external factors prevented defendant from raising this issue on appeal, the court should address the merit of the claim especially where we see into the record an objection was made contemporaneous to the prosecution's

42

contentions. MCR 6.508(D)(3); Reed v. Ross; Murray v. Carrier; People v. Reed.

**Ineffective Assistance of Counsel:**

If indeed appellate counsel was aware of the factual information necessary to raise this above issue on appeal, Defendant submits counsel's failure to do so denied him his right to effective assistance of appellate counsel on appeal. Therefore, Defendant has demonstrated good cause for his failure to raise this issue on appeal of right. People v. Reed, supra.

In order to establish a denial of the effective assistance of counsel guaranteed under the state and federal constitutions, a defendant must demonstrate that counsel's performance was deficient and that, under an objective standard of reasonableness, counsel made error so serious that counsel was not functioning as an attorney as guaranteed by the Sixth Amendment. Moreover, the defendant must overcome the presumption that the appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance. Jones v. Barnes, 463 US 745, 752; 103 S.Ct 3308; 77 L.Ed.2d 987 (1983).

In the present case, defendant maintains his appellate counsel's failure to raise the prejudicial photograph issue where such objection was made on the record pursuant to MRE 103(a)(1). Such error under this fact situation is very serious where counsel was not functioning as an attorney as guaranteed by the Sixth Amendment, therefore defendant has demonstrated good cause for not raising this issue on his appeal.

When a defendant claims he is entitled to a new trial by setting aside convictions due to his attorney ineffective assistance, the defendant must show that but for counsel's failure to raise issue or deliberate by-passed the orderly procedure of the state courts by personal waiver of the claim amounting to "'an intentional relinquishment or abandonment of a known right or

43

privilege," It is indeed a miscarriage of justice where such issue carry strong value. See Johnson v. Zerbst, 304 US 458, 464; 58 S.Ct 1019; 82 L.Ed 1461 (1938); Wainwright v. Sykes, supra, 433 US at 87-88; 97 S.Ct at 2506-2507. At minimum, then, Wainwright v. Sykes, plainly implied that the defendant of a constitutional decision would, absent extrodinary circumstances, bind the habeas petitioner even if he had not personally waived that claim. See Id., at 91, n.14; 97 S.Ct at 2508 n.14; Reed v. Ross, supra, 468 US 1, 13; 104 S.Ct 2901, 2909.   Beyond that, the court left open "for resolution in future decisions the precise definition of the cause-and-prejudice standard." 433 US at 87; 97 S.Ct at 2507.

A number of courts have held that an attorney's failure to argue mitigating circumstances in an effort to reduce his client's sentence constituted ineffective assistance of counsel.  For example, in Prichard v. Lockhart, 990 F.2d 352, 354 (8th Cir. 1993), the court held that counsel was ineffective for his failure to object to the use of erroneous information at a sentencing hearing. Kubat v. Thierat, 867 F.2d 352, 368 (7th Cir. 1989), the court held that counsel was ineffective for giving "grossly substandard, rambling and incoherent" argument at sentencing.  The question becomes, whether an assessment of the record Defendant claim hold more strength than the issue appellate counsel raised in the instant case?

As the court clearly see into the record, the defense counsel objected to the admission of the colored photographs pursuant to MRE 403 concerns.  Such objection is preserved under MRE 103(a)(1) unless waived or deliberately by-passed by counsel's decision.

Since waiver is defined by legal definition as an intentional and voluntary surrender of some known right, which generally may either result from an express agreement of be infered from circumstances. See Informed consent, Defendant did nothing that would suggest he consented to waiver his

44

constitutional right to appellate procedure to raise presented issues thats on the record under the contemporaneous-objection Rule under Federal and State standard FRE 103(a)(1); MRE 103(a)(1). See Wainwright v. Sykes, supra at 433; 97 S.Ct at 2507.

Moreover, since counsel failed to raise such issue that was preserved on record by trial counsel, defendant shall not be accountable for such waiver. Therefore, the defendant has satisfied the first prong or bar pursuant to MCR 6.508(a) by a showing of "good cause" for failure to raise such grounds on appeal or in the prior motion.

## Miscarriage of Justice:

The court may waive the good cause requirement if it determines that the claim asserted constituted "a fundamental defect which inherently resulted in a complete miscarriage of justice," or if the party asserting the claim did not receive "rudimentary demands of fair procedure." MCR 6.002 § 3 (Longhofer, Michigan Court Rules Practice Text (3rd ed)), MCR 6.414. See Aldrich supra 631 NW2d at 68. Also see Davis v. United States, 417 US 333, 346 (1974); Hill v. United States, 368 US 424, 428 (1962), and United States v. Smith, 844 F.2d 203, 205-06 (5th Cir. 1988).

Here, defendant maintains his convictions and sentence is based on materially prejudicial evidence. Chamberlain, supra, 467 Mich 653; Cervi, supra, 270 Mich App 717 NW2d 356.

In Michigan, as in the federal courts, a plea of not guilty puts prosecution to its proofs regarding all elements of the crime charged. MCR 6.301(A). Aguwa, supra 245 Mich App 626; Vandervliet, supra, 444 Mich 508 NW2d 114. See also Matthews v. US., 485 US. 108 S.Ct 883. Prosecutor's duty is not only to use every legitimate means to bring about a just conviction, but to refrain from improper methods calculated to produce a wrongful conviction.

45

Berger v. United States, 295 US 78, 88; 55 S.Ct 79 L.Ed 1311 (1935).  See Ho
supra, 231 Mich App. 585 NW2d 357, 362-63; Eddington, 387 Mich. 551; 198 NW2d
297.

Moreover, anything less than a new trial denies defendant the rudimentary
demands of due process and a fair procedure because defendant was convicted on
the basis of improper methods calculated to produce a wrongful conviction.
Berger, supra, 295 US., 55 S.Ct 79., Sabin, (After Remand), 463 Mich 43, 58.

### (b) Actual Prejudice

While the good cause requirement has never been clearly defined, the
"actual prejudice" requirement is defined by MCR 6.508(D)(3)(i)(iii).  In the
case of challenge to the conviction(s), "actual prejudice" standard, to obtain
collateral relief based on trial errors to which no contemporaneous objection
was made, a defendant must show both cause excusing his double procedural
default and actual prejudice resulting from errors of which he complains.
Frady, supra, 456 US. 102 S.Ct 1595.  See MCR 6.508(D)(3)(b)(iii).  The court
may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes
that there is a significant possibility that he defendant is innocent of the
crime. MCR 6.508(D)(3)(b)(iv).

To the extent that they both require "but for" causation, the "actual
prejudice" requirement under MCR 6.508(D)(3)(b) appears to be equivalent to the
prejudice test adopted by the United States Supreme Court in Strickland,
supra., to establish ineffective assistance of counsel, in that under either
test the defendant must show that, "but for" the error complained of, a
"reasonable probability" exist that the results would have been different.  The
"probability requirement" requires less than a preponderance of evidence. Agan
v. Singletary, 12 F.3d 1012, 1018 (11th Cir. 1994).

In the present case, defendant maintains his conviction is based on

materially prejudicial evidence calculated to produce a wrongful conviction.

First, it is clear the jurors was affected by the prejudicial presentation of the photographs. (TT Vol. 1 p 52, 53).

Secondly, the record indicates there were more than enough photos of the deceased presented to arouse sympathies and prejudice. (TT Vol. IV p 56, 57; 109-110; 111-116-121; 122-130). Applying the same rational of Ho, supra. where the admission of gruesome photographs solely to arouse the sympathies or prejudices of the jury may be error, requiring reversal. 231 Mich App., 58 NW2d 357, 362-63.

Since the defendant is entitled to both equal protection and due process under both Federal and State Constitutional laws. U.S.C.A. Const. Amend. 5, 14 and Mich. Const. 1963, Art 1, § 20; Art 6 § 10. Griffin v. People of the State of Illinois, 351 US 12; 76 S.Ct 585 (1956); People v. Reed, supra.

Finally, if the Court is in "grave doubt" whether the error had substantially and injurious effect, the error cannot be deemed harmless and the court must find in favor of the defendant. O'Neal v. McAninch, 513 US 432; 115 S.Ct 922; 130 L.Ed.2d 947 (1995). "Grave doubt" in this context means that in the judges mind, the matter is so evenly balanced that the judge feels in virtual equipoise as to the harmlessness of the error. 130 L.Ed.2d at 951. Id.

Accordingly, defendant meets the second prong under MCR 6.508(D)(3)(b) and therefore the court should address his Due Process issue in relation to the prejudicial photographs that was calculated to arouse sympathies and passions of the jury. (TT Vol. 1 p 5; TT Vol. 1 p 49-50). Where such impact from the gruesome photographs affected the jury the only remedy is to set aside convictions. MCR 6.508(D)(3)(i)(iii); MCR 6.414.

RELIEF REQUESTED

Based on the foregoing errors, this court should grant conditional writ of habeas corpus or new trial, Defendant is in custody in violation of the Constitution or laws or treaties of the United States.

Respectfully submitted,

/s/ _Darrius M. McCrary_
Darrius M. McCrary
MDOC No. 827472
2400 S. Sheridan Drive
Muskegon, Mich 49442

Date: April 19th, 2017

48

"APPENDIX A"

COURT OF APPEALS JUNE 13, 2013 DECISION

DEFENDANTS COPY

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DARRIUS MARTICE MCCRARY,

       Defendant-Appellant.

UNPUBLISHED
June 13, 2013

No.  308237
Oakland Circuit Court
LC No.  2011-237893-FC

Before:  M. J. KELLY, P.J., and MURRAY and BOONSTRA, JJ.

PER CURIAM.

Defendant Darrius Martice McCrary appeals by right his jury convictions of first-degree murder (under two theories: premeditated murder and felony murder), MCL 750.316, first-degree home invasion, MCL 750.110a, and possession of a firearm during the commission of a felony (felony-firearm) (three counts), MCL 750.227b.[1]  The trial court sentenced McCrary to serve life in prison without the possibility of parole for the first-degree murder conviction, to serve 7 to 20 years in prison for the first-degree home invasion conviction, and to serve two years' in prison for each felony-firearm conviction.  We conclude there were no errors warranting a new trial.  However, we agree that McCrary was improperly convicted of a third count of felony-firearm.  For these reasons we affirm in part and vacate in part.

McCrary first argues that the trial court erred by denying his request for a voluntary manslaughter instruction.  This Court reviews claims of instructional error de novo.  *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011).  This Court reviews the jury instructions as a whole to determine whether the instructions fairly presented the issues for trial and sufficiently protected the defendant's rights.  *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000).

"[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it."  *People v Cornell*,

---

[1] The jury acquitted McCrary of assault with intent to murder, MCL 750.83, and an additional count of felony-firearm, MCL 750.227b.

-1-

is so severe or extreme as to provoke a reasonable man to kill. See *Sullivan*, 231 Mich App at 519. And even if the evidence was sufficient to provoke a reasonable man—and it was not—any error would not warrant relief. McCrary was convicted of first-degree premeditated murder even though the trial court instructed the jury on the lesser included offense of second-degree murder. As such, even if McCrary were entitled to a voluntary manslaughter instruction, the trial court's failure to instruct on voluntary manslaughter would be harmless. See *People v Gillis*, 474 Mich 105, 140 n 18; 712 NW2d 419 (2006).

Next, McCrary argues that the prosecutor erred by asserting in rebuttal that McCrary had not presented a defense, which—he claims—improperly shifted the burden of proof and improperly pointed out that McCrary did not testify on his own behalf. This Court reviews unpreserved claims that a prosecutor erred for plain error affecting substantial rights. *People v Fyda*, 288 Mich App 446, 460-461; 793 NW2d 712 (2010).

Before addressing this claim of error, we would like to briefly acknowledge the prosecutor's contention that it is a misnomer to label claims such as this one as claims of "prosecutorial misconduct." Although we recognize that the phrase prosecutorial misconduct has become a term of art in criminal appeals,[2] we agree that the term "misconduct" is more appropriately applied to those extreme—and thankfully rare—instances where a prosecutor's conduct actually violates the rules of professional conduct. See, e.g., MRPC 8.4. In the vast majority of cases, the conduct about which a defendant complains is premised on the contention that the prosecutor made a technical or inadvertent error at trial—which is not the kind of conduct that would warrant discipline under our code of professional conduct. Therefore, we agree that these claims of error might be better and more fairly presented as claims of "prosecutorial error," with only the most extreme cases rising to the level of "prosecutorial misconduct."

"[A] prosecutor may not argue facts not in evidence or mischaracterize the evidence presented . . . ." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). However, the prosecution is free to argue the evidence and all reasonable inferences arising from it as they relate to the prosecution's theory of the case. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Attacking the defense theory does not shift the burden of proof and commenting on the weaknesses of the defendant's case is not error. *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005). Also, "[a] prosecutor may fairly respond to an issue raised by the defendant." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008).

---

[2] We note that our Supreme Court began using this phrase by at least the 1970s. See, e.g., *People v Hammond*, 394 Mich 627, 630; 232 NW2d 174 (1975). In its earlier decisions, our Supreme Court appears to have addressed these claims as claims that there was error warranting reversal and not as prosecutorial misconduct. See, e.g., *People v Allen*, 351 Mich 535, 544, ; 88 NW2d 433 (1958) (reviewing the "ground of error" premised on the prosecutor's admittedly "intemperate and perhaps better left unsaid" remarks).

"APPENDIX B"

MICHIGAN SUPREME COURT NOVEMBER 13, 2013 DECISION

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

November 25, 2013

147473

PEOPLE OF THE STATE OF MICHIGAN,
    Plaintiff-Appellee,

v

                                          SC: 147473
                                          COA: 308237

DARRIUS MARTICE MCCRARY,
    Defendant-Appellant.
                                          Oakland CC: 2011-237893-FC

_____/

On order of the Court, the application for leave to appeal the June 13, 2013 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.





I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 25, 2013

                                            Clerk

p1118

"APPENDIX C"

TRIAL COURT APRIL 6, 2015 RELIEF FROM JUDGMENT DECISION

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff,                           Case No. 2011-237893-FC

v                                      Hon. Colleen A. O'Brien

DARRIUS MARTICE McCRARY,

      Defendant.

_____/

DARRIUS MARTICE MCCRARY #827472
Defendant in Propria Persona
St. Louis Correctional Facility
8585 N. Croswell Road
St. Louis, MI 48880

_____/

<u>OPINION AND ORDER</u>

At a session of Court
Held in Pontiac, Michigan
On

**APR 0 6 2015**

      Defendant was convicted of one count of first-degree murder, MCL 750.316, one count of first-degree home invasion, MCL 750.110a, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] He was sentenced to life in prison without the possibility of parole for the first-degree murder conviction, a prison term of 7-20 years for the first-degree home invasion conviction, and two years in prison for each of the felony-firearm convictions.   On appeal, the Michigan Court of Appeals vacated one of Defendant's felony-firearm convictions, but affirmed the remainder of the convictions. *People v McCrary,* unpublished opinion per curiam of the Court of Appeals, issued June 13, 2013 (Docket

_____

[1] The jury acquitted Defendant of assault with intent to murder, MCL 750.83, and an additional count of felony-firearm, MCL 750.227b.

No. 308237).  This matter is now before the Court on Defendant's motion for relief from judgment under MCR 6.501 *et seq.*

Post-conviction relief under MCR 6.501 *et seq.* is an extraordinary remedy that is appropriate only to prevent manifest injustice. *People v Reed*, 449 Mich 375, 388; 535 NW2d 496 (1995).  Defendant has the burden of proving entitlement to the relief requested.  MCR 6.508(D).  Defendant argues that he is entitled to relief from judgment because color autopsy photographs admitted at trial prejudiced his right to a fair trial.  Because Defendant could have raised this issue on appeal, he is not entitled to relief unless he demonstrates both good cause for failure to raise the issues on appeal and actual prejudice from the alleged irregularities. MCR 6.508(D)(3).  If either "good cause" or "actual prejudice" is lacking, this Court need not address the other prong before denying the motion.  *People v Jackson*, 465 Mich 390, 405-406; 633 NW2d 825 (2001).

Under MCR 6.508(D)(3)(a), good cause for failing to raise an issue on appeal may be established by proving ineffective assistance of appellate counsel or by showing that an external factor prevented the defendant from raising the issue earlier.  *Reed, supra*, 449 Mich at 378. Here, Defendant asserts that ineffective assistance of appellate counsel prevented him from raising the issue on appeal.  The standard for ineffective assistance of appellate counsel is the same as that for trial counsel.  *People v Pratt,* 254 Mich App 425, 430; 656 NW2d 866 (2002). Thus, to prove ineffective assistance of appellate counsel, Defendant must show that appellate counsel's performance fell below an objective standard of reasonableness and that, as a result, Defendant was prejudiced.  *People v Pickens,* 446 Mich 298, 302-303, 312-324; 521 NW2d 797 (1994).  To establish prejudice, Defendant must show a reasonable probability that the outcome would have been different but for appellate counsel's errors.  *People v Grant,* 470 Mich 477, 486; 684 NW2d 686 (2004).

Defendant has not shown that he received ineffective assistance of appellate counsel where he has not shown any error in the admission of the autopsy photographs.  Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.  Evidence has probative value if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." MRE 401; *People v Mills,* 450 Mich 61, 68; 537 NW2d 909 (1995). While photographs offered solely to inflame the minds of the jurors should be excluded, photographs that are otherwise admissible for a proper purpose are not rendered inadmissible "merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Mills, supra,* 450 Mich at 77.

Here, the autopsy photographs had probative value because they corroborated Dr. Dragovic's testimony regarding the nature and extent of the victim's injuries. In addition, the photographs, which depicted four gunshot wounds, were relevant to proving intent to kill for the purpose of proving the first-degree murder charge. Defendant has not shown that the probative value of the photographs was substantially outweighed by the danger of unfair prejudice resulting from the photographs. The photographs were not enhanced or altered, but were actual factual representations of the injuries suffered by the victim. See *Mills, supra,* 450 Mich at 77-78. The photographs were not particularly gruesome or shocking, and there is no indication that the photographs were admitted for the purpose of inflaming the jury. Where Defendant has not shown any error in the admission of the photographs, he cannot show that appellate counsel was ineffective for failing to raise this issue on appeal. *People v Ericksen,* 288 Mich App 192, 201; 793 NW2d 120 (2010); *People v Snider,* 239 Mich App 393, 425; 608 NW2d 502 (2000) (failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel). Therefore, Defendant has not demonstrated good cause for failing to raise this issue on appeal.

Defendant urges this Court to waive the "good cause" requirement because, due to the admission of the autopsy photographs, his conviction was a miscarriage of justice. The court may waive the "good cause" requirement if it concludes that there is a significant possibility that the defendant is innocent of the crime. MCR 6.508(D)(3). Having reviewed the evidence in the record, however, this Court is not persuaded that there is a significant possibility that Defendant is innocent of the crime. Therefore, this Court will not waive the "good cause" requirement.

Defendant has failed to meet his burden of establishing entitlement to relief from judgment. MCR 6.508(D).

3

WHEREFORE, IT IS HEREBY ORDERED that Defendant's motion for relief from judgment is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for appointment of counsel is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for an evidentiary hearing is DENIED.

**COLLEEN A. O'BRIEN**

_____

Hon. Colleen A. O'Brien, Circuit Judge

A TRUE COPY
LISA BROWN
Oakland County Clerk - Register of Deeds
By _____
Deputy

4

"APPENDIX D"

COURT OF APPEALS OCTOBER 29, 2015 RELIEF FROM JUDGMENT DECISION

# Court of Appeals, State of Michigan

## ORDER

People of MI v Darrius Matrice McCrary

Docket No.   329318

LC No.   2011-237893-FC

Deborah A. Servitto
Presiding Judge

Michael J. Talbot

Mark J. Cavanagh
Judges

---

The Court orders that the motion to waive fees is GRANTED and fees are WAIVED for this appeal only.

The delayed application for leave to appeal is DENIED because defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The defendant alleges grounds for relief that could have been raised previously and he has failed to establish both good cause for failing to previously raise the issues and actual prejudice from the irregularities alleged, and has not established that good cause should be waived. MCR 6.508(D)(3)(a) and (b).

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

OCT 2 9 2015

Date

Chief Clerk

"APPENDIX E"

SUPREME COURT SEPTEMBER 26, 2016 DECISION

*500 Mich. 853; 883 N.W.2d 753;*
*2016 Mich. LEXIS 1706, \**

**PEOPLE** OF THE STATE OF MICHIGAN, Plaintiff-Appellee, v DARRIUS MATRICE **McCRARY**, Defendant-Appellant.

SC: 152897

SUPREME COURT OF MICHIGAN

500 Mich. 853; 883 N.W.2d 753; 2016 Mich. LEXIS 1706

September 6, 2016, Decided

**PRIOR HISTORY:  [\*1]** COA: 329318. Oakland CC: 2011-237893-FC.
People v. McCrary, 2013 Mich. App. LEXIS 1035 (Mich. Ct. App., June 13, 0013)

**JUDGES:** Robert P. Young, Jr., Chief Justice. Stephen J. Markman, Brian K. Zahra, Bridget M. McCormack, David F. Viviano, Richard H. Bernstein, Joan L. Larsen, Justices.

**OPINION**

**Order**

On order of the Court, the application for leave to appeal the October 29, 2015 order of the Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

**LexisNexis®**  About LexisNexis  |  Privacy Policy  |  Terms & Conditions  |  Contact Us   **RELX Group™**
Copyright ©  2017 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

April 19th, 2017

TO: Office of the Clerk
    United States District Court
    Eastern District of Michigan
        Southern Division
    Theodore Levin United States Courthouse
    231 West Lafayette Blvd., Room 564
    Detroit, Mich 48226


        RE: <u>**Darrius McCrary** v. **S. L. Burt,**</u>

            Case No. 14-cv-14485
            Hon. Laurie J. Michelson
            Mag. Judge David R. Grand

Dear Clerk:

    Enclosed please find the original of Petitioner's Amended Petition For Writ of Habeas Corpus, Brief in Support of Amended Petition for Habeas Corpus, Verification and Certificate of Service for filing in the above captioned cause.

    If there are any other documents necessary, please contact me at the Muskegon Correctional Facility.

    I am thanking you in advance for your time, assistance and consideration in this matter.


                        Sincerely,


                        Darrius McCrary
                        Darrius McCrary
                        Petitioner In Pro Per




cc: File

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIUS MCCRARY,

        Petitioner,

v.

S. L. BURT,

        Respondent.

_____/

Case No. 14-cv-14485
Hon. Laurie J. Michelson
Mag. Judge David R. Grand

## CERTIFICATE OF SERVICE

STATE OF MICHIGAN      )
                      ) ss.
COUNTY OF MUSKEGON   )


    I, Darrius McCrary, certify under the penalty of perjury that on April 19th, 2017, I mailed one copy, by first-class mail, of the Petitioner's Amended Petition for Writ of Habeas Corpus, Brief in Support of Petition for Habeas Corpus, Verification and Certificate of Service to:

Mr. Bill Schutte
Attorney for Respondent
Michigan Attorney General
Habeas Corpus Division
P.O. Box 30217
Lansing, Mich 48909

Office of the Clerk
United States District Court
Eastern District of Michigan
   Southern Division
231 W. Lafayette Blvd., Room 564
Detroit, Mich 48226


/s/ *Darrius McCrary*
Darrius McCrary
MDOC No. 827472
2400 S. Sheridan Drive
Muskegon, Mich 49442


Date: April 19th, 2017



RECEIVED

APR 24 2017

CLERK'S OFFICE
U.S. DISTRICT COURT

U.S. POSTAGE >> PITNEY BOWES

ZIP 48442 $ 006.65⁰
02 1R
0001652378 APR 20 2017

